UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN B. CHASIN
13218 Hawthorn Lane
Woodbridge, VA 22193

KEVIN CONERLY
4028 Meade Street, N.E.
Washington, DC 20019

DWIGHT EVANS
207 Ammunition Avenue
Odenton, MD 21113

SHANGO KWAME RASHUMAA
1317 Anacostia Road, S.E. #3
Washington, DC 20019

JASPER W. STERLING
7223 Flag Harbor Drive
District Heights, MD 20747

ELEON A. BAKER
3342 Brothers Place, S.E.
Washington, DC 20032

        Plaintiffs,

  v.

DISTRICT OF COLUMBIA
John A. Wilson Building
1350 Pennsylvania Avenue, N.W.
Washington, DC 20004

        Defendant.

**COMPLAINT**
(for injunctive relief and damages; violation of religious liberty)

1. This is an action to compel the District of Columbia Department of Fire and Emergency Medical Services ("Department" or "Fire Department") to abide by its statutory obligation to respect and accommodate the religious practices of its employees. The Department prohibits its employees from wearing beards. The plaintiffs are six employees who hold sincere religious convictions prohibiting them from shaving their beards. Plaintiffs (and many others) have worked at the Department for many years without shaving, and have experienced no safety problems. Modern safety equipment makes it unnecessary to be clean-shaven in order to be safe. The Department therefore cannot prove that its no-beard rule is essential to safety. In the absence of such proof the Religious Freedom Restoration Act prohibits the Department from overriding plaintiffs' religious convictions.

2. Just last month, in an essentially identical case styled *Potter v. District of Columbia*, No. 01-cv-1189 (JR), this Court entered a preliminary injunction protecting three Fire Department employees from being discharged because they wear beards for religious reasons, and ordering the Department to allow them to take "fit tests" to show that they could safely wear negative-pressure respirators despite their beards. Disdaining this Court's action, the Fire Chief has announced that he will now proceed to discipline and discharge all other members of the Department who wear beards, no matter how sincere their religious reasons for doing so. Nor will he permit them to take fit tests before being discharged. Injunctive relief is necessary to protect the long-standing *status quo* and to prevent imminent and irreparable injury to plaintiffs' religious rights.

## Jurisdiction

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because plaintiffs assert claims under federal law. Plaintiffs' cause of action is

established by 42 U.S.C. § 1983.

    4. Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

**Parties**

    5. Plaintiff Steven B. Chasin is employed as a paramedic by the District of Columbia Department of Fire and Emergency Medical Services. He has been a member of the Department for more than fifteen years. He has worn a short beard for more than seventeen years, as a sincere observance of his Jewish faith. Absent relief from this Court, he will soon be discharged from the Department if he does not shave his beard.

    6. Plaintiff Kevin Conerly is employed as a firefighter by the District of Columbia Department of Fire and Emergency Medical Services. He has been a member of the Department for more than sixteen years. He has worn a beard for approximately twenty-five years, as a sincere observance of his Nazerite faith, which includes a vow not to shave. He wore a beard during his service in the United States Army, 1980-1983, prior to joining the Department. Absent relief from this Court, he will soon be discharged from the Department if he does not shave his beard.

    7. Plaintiff Dwight Evans is employed as a paramedic by the District of Columbia Department of Fire and Emergency Medical Services. He has been a member of the Department for thirty years; there is no paramedic senior to him in the Department. He has worn a beard for thirty-three years, including during his service in the United States Army prior to joining the Department. Plaintiff Evans was a Baptist for most of his life, but became a Muslim in December 2004 and wears his neatly trimmed beard as one part of his sincere observance of his new religious faith. Absent relief from this Court, he will soon be discharged from the Department if he does not shave his beard.

8. Plaintiff Shango Kwame Rashumaa is employed as a paramedic by the District of Columbia Department of Fire and Emergency Medical Services. He was a member of the Department from 1999 to 2002, when he left to undertake a journey of personal and spiritual growth, traveling in Africa and the Caribbean and studying his spiritual and cultural heritage. As part of his spiritual rebirth, he legally changed his name to what it is today. As spiritual observances, he follows a vegan diet, wears his hair in locks, covers his head, and does not shave his face. He rejoined the Department in April 2004; he has not shaved, as a matter of sincere spiritual observance, since before that time. Absent relief from this Court, he will soon be discharged from the Department if he does not shave his beard.

9. Plaintiff Jasper W. Sterling is employed as a paramedic by the District of Columbia Department of Fire and Emergency Medical Services. He has been a member of the Department for fourteen years. He has worn a beard for approximately twenty-four years, including during his five years of service in the United States Air Force. He wears his beard as a sincere observance of his Muslim faith. Absent relief from this Court, he will soon be discharged from the Department if he does not shave his beard.

10. Plaintiff Eleon A. Baker is a sergeant with the District of Columbia Department of Fire and Emergency Medical Services. He has been a D.C. firefighter for more than twenty years, since June 1985. He has worn a short beard, following the tenets of his Nazerite faith, for about 19 years. Absent relief from this Court, he will soon be discharged from the Department if he does not shave his beard.

11. Defendant District of Columbia is a municipal corporation of which the District of Columbia Department of Fire and Emergency Medical Services is an agency.

**Facts**

12. For at least thirty years, the Department has officially permitted its employees to wear 1/4-inch beards if they suffered from a medical condition known as *pseudofolliculitis barbae,* also known as "PFB" or "razor bumps." Informally, the Department has allowed all employees to wear such beards for at least twenty years. During that time, hundreds of Department members have worn beards. During that time, hundreds of Department members have taken and passed official fit tests while wearing beards. During all that time, there has not been a single incident in which a member's facial hair was responsible for a safety problem.

13. Subsequent to the decision of the District of Columbia Court of Appeals in *Kennedy v. District of Columbia*, 654 A.2d 847 (1994), all Department members were officially permitted to wear 1/4-inch beards. As a practical matter, the Department did not enforce the 1/4-inch limitation on the length of beards, and many members wore beards longer than 1/4 inch. Many Department members passed official fit tests while wearing beards longer than 1/4 inch. No member's facial hair has ever been responsible for a safety problem.

**Firefighters**

14. While on a fireground, or in any other toxic atmosphere, firefighters protect themselves from respiratory injury by wearing a "self-contained breathing apparatus" (SCBA) consisting of a face mask connected to an air tank. The air tank provides a constant flow of pressurized clean air to the face mask, such that any imperfections in the fit between a firefighter's face and mask will result in a leakage of clean air to the outside atmosphere, rather than a leakage of toxic material into the face mask.

15. The presence of facial hair might or might not cause an imperfect fit between a firefighter's face and face mask. Other variables, such as a thin face, prominent cheekbones, a long jaw or nose, or facial scars, might or might not also cause an imperfect fit between a firefighter's face and face mask.

16. Because of the positive-pressure feature of the SCBA, an imperfect fit does not directly endanger a firefighter's life or health or the safety of others.

17. A less perfect fit—whatever its cause—will result in a firefighter depleting his or her air supply somewhat faster than a more perfect fit. Many other individual variables, including body weight, physical fitness, respiratory efficiency, and physiological reaction to stress, will also affect the speed with which a firefighter depletes his or her air supply.

18. There is no reason to believe that the presence or absence of facial hair will have a greater effect on the speed with which a firefighter's air supply is used than the firefighter's body weight, physical fitness, respiratory efficiency, or physiological reaction to stress. Firefighter plaintiffs Conerly and Baker do not deplete their air supply faster than their fellow firefighters.

19. Firefighters with facial hair present no greater risk to themselves or others, when fighting fires or when operating in any hazardous atmosphere, than clean-shaven firefighters.

20. Firefighter plaintiffs Conerly and Baker have been working safely for more than 36 combined years with their beards.

21. In the spring of 2001, then-D.C. Fire Chief Ronnie Few announced strict enforcement of the Department's grooming policy, which prohibited (among other things) beards longer than 1/4 inch, hair longer than the top of the shirt collar (for men only), and head coverings (such as yarmulkes and kufis) that were not part of the official uniform. Six

firefighters who, as a matter of religious observance, wore beards, long hair, and/or head coverings, filed a civil action in this Court to protect their rights under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq*. That action was styled *Potter v. District of Columbia*, No. 01-cv-1189 (JR).

22. On June 22, 2001, this Court entered a preliminary injunction prohibiting the Department from taking any action against the plaintiffs in the *Potter* case because of their beards, long hair or head coverings. With regard to beards, this Court's order rested on its understanding that the positive-pressure feature of the breathing apparatus provided protection for firefighters with facial hair.

23. For the next four years, the Department honored that injunction and, by order of the Fire Chief (Special Order 48, 2001, dated June 26, 2001), exempted all other members of the Department who "object[ed] on a religious basis to any portion of the grooming regulations" from complying with the portion of the grooming regulations to which they so objected.

**Emergency Medical Service Personnel**

24. In addition to firefighters, the Department employs approximately 200 emergency medical technicians (EMTs) and paramedics who respond to emergency medical calls in the District of Columbia. Emergency Medical Service (EMS) personnel are not trained or equipped to work in hazardous atmospheres. Until some months after the terrorist attacks of September 11, 2001, the Department's EMS personnel were not provided with, or trained to use, respiratory protection apparatus.

25. Sometime in late 2001 or early 2002, the Department's EMS personnel were provided with face masks and "go-bags," which contain a filter that, when fitted to the face

mask, creates an air-purifying respirator (APR) that provides protection against certain atmospheric hazards.

26. When these go-bags were issued, each emergency medical technician and paramedic was required to take a fit test to determine whether he or she could obtain a good seal. Plaintiffs Chasin, Evans, Rashumaa and Sterling, who are paramedics, each passed the fit test. Each had a beard at the time. Thirty to 40 of the approximately 200 emergency medical service personnel also had beards at that time, and each passed the fit test. Some clean-shaven personnel had difficulty passing the test, but after appropriate adjustments to their masks, everyone passed.

### Go-Bag Filters

27. Subsequently, the Department's firefighters were also provided with go-bags.

28. A face mask fitted with a go-bag filter operates as negative-pressure air-purifying respirator. Because outside air is pulled through the filter by the user's intake of breath, outside air could leak into the face mask in the event of a poor fit.

29. For this and other reasons, the respirator formed by a face mask and go-bag filter is not approved for use in a toxic atmosphere. Department personnel are not permitted to work in toxic atmospheres using their face masks and go-bag filters.

30. When the go-bags were distributed, Department personnel were advised that they were intended for use in civil disturbance situations, for protection against non-lethal hazards such as tear gas, pepper spray, and the like.

31. Department personnel are not required to, and do not, carry their face masks and go-bags with them when they are off duty. They are kept at the station house with members' other equipment.

**Recent Developments**

32. On May 25, 2005, Fire Chief Thompson issued Special Order 20, Series 2005. That order requires all members to be clean-shaven in the area where the sealing surface of their face masks meet their faces. Because the sealing surface of a face mask meets the face in the same area where a beard grows, the effect of Special Order 20 is that no member may wear a beard. Special Order 20 provides that disobedience will result in discharge.

33. At the time Special Order 20 was issued, Fire Chief Thompson also issued a "Notice to Persons Seeking Exemption to Special Order 20, 2005 for Religious Reasons." That notice stated:

> Special Order 20, 2005 does not provide for an exemption for religion or any other reason. However, because of court proceedings related to this issue, the Department will honor requests for a religious exemption until the court rules on this matter. These requests will no longer be honored **when and if the court rules that federal law does not require religious based exemptions to Special Order 20, 2005**. [Emphasis added.]

34. Pursuant to that memorandum, the Department continued to allow members who were not plaintiffs in the *Potter* case to wear beards for religious reasons in June, July and part of August 2005.

35. This court has never ruled that that federal law does not require religiously-based exemptions to Special Order 20, 2005. To the contrary, on August 11, 2005, this Court entered an additional preliminary injunction in the *Potter* case ordering the Department to accommodate the religious beliefs of the *Potter* plaintiffs by allowing them (in the first instance) to take fit tests, even though Special Order 20 provides that members with facial hair may not take fit tests.

36. Reneging on his May 2005 Notice, on August 24, 2005, Fire Chief Thompson issued a new "Notice to Persons Seeking Exemption from Special Order 20 for Religious

9

Reasons," stating that "[t]he Department is no longer honoring requests for a religious exemption," and that "failure to comply with Special Order 20 shall result in disciplinary action as set forth in the order" regardless of the religious basis for a member's wearing facial hair.

37. Despite this Court's August 11 order requiring fit tests for the *Potter* plaintiffs, the Fire Chief will not permit other members with religious reasons for wearing beards to take fit tests before being discharged. Plaintiffs Chasen, Evans, Rashumaa and Sterling will be discharged despite having passed fit tests.

### No Need to Burden Plaintiffs' Exercise of Religion

38. Plaintiffs Kevin Conerly and Eleon Baker are firefighters with the Department. Their Nazerite religious faith teaches them not to shave their beards, and they have worn beards for approximately 25 and 19 years, respectively. They are in every material respect similarly situated to the plaintiffs in the *Potter* case.

39. Plaintiffs Conerly and Baker can obtain adequate respiratory protection in any situation in which they would be expected to work by wearing their self-contained breathing apparatus. There is no situation in which their go-bag filters would provide better protection.

40. Should they be required to use their go-bag filters, there is no reason to believe that plaintiffs Conerly and Baker cannot obtain a good face mask seal, with facial hair, at this time or in the future.

41. Plaintiffs Chasen, Evans, Rashumaa and Sterling are paramedics. Their religious beliefs teach them not to shave their beards, and they have worn beards for approximately 17, 33, 2 and 24 years, respectively. They are neither trained nor permitted to work in toxic atmospheres. Plaintiffs Chasen, Evans and Sterling each passed a formal fit test when he was

10

issued a face mask and filter in 2001 or 2002.  Plaintiff Rashumaa passed a fit test when he rejoined the Department in 2004.  Each was wearing a beard at the time.

42.  There is no reason to believe that the plaintiffs Chasen, Evans, Rashumaa and Sterling cannot obtain a good face mask seal, with facial hair, at this time or in the future.

43.  The Department owns the equipment needed to conduct formal fit tests.  The cost to the Department of conducting fit tests on plaintiffs would be trivial.

44.  Even in the event that a plaintiff could not pass a fit test—whether because of facial hair or any other reason—alternative equipment is readily available that will provide him with adequate respiratory protection in situations where the go-bag filter would be used.

45.  The Department owns a number of powered air-purifying respirators (PAPRs) manufactured by the same company that makes the face masks used by all Department members and the filters contained in the go-bags.  These PAPRs are compatible (or "interoperable") with the Department's other respiratory protection equipment.

46.  A PAPR is similar to the APR formed by a face mask and go-bag filter, except that in a PAPR a battery-operated fan pushes air through the filter.  A PAPR therefore creates a positive-pressure atmosphere inside the face mask, so that any leakage will be outward.  A PAPR also eliminates the need for the user to operate the filter through his or her own respiratory effort.  A PAPR therefore provides both better protection, and a longer work-span, than an APR formed by a face mask and go-bag filter.

47.  In the event that a plaintiff could not pass a fit test because of his religious observance, use of a PAPR would provide him with at least as good a level of respiratory protection as other Department members would obtain using their go-bag equipment, and would enable him to work for longer than he could work using his go-bag equipment.

48. The cost to the Department of issuing PAPRs to plaintiffs would be a minuscule fraction of the Department's operating budget, which exceeds $150 million annually.

49. The Department has not considered, and cannot satisfy its burden of demonstrating, that these or other accommodations will not satisfy its interest in safety while allowing plaintiffs to exercise their religious beliefs.

**Harm to Plaintiffs**

50. Special Order 20 further provides that on the first day a member reports for duty with facial hair he will be removed from field operations and ordered to shave, that on the second day a member reports for duty with facial hair he will be suspended for 12 duty hours, that on the third day a member reports for duty with facial hair he will be suspended for 24 duty hours, and that on the fourth day a member reports for duty with facial hair his termination will be proposed.

51. On September 8, 2005, Plaintiff Conerly reported for duty for a fourth day with facial hair and was proposed for termination. Plaintiff Sterling anticipates that he will be proposed for termination on September 13. Plaintiff Chasen anticipates that he will be proposed for termination on September 15. Plaintiffs Evans and Rashumaa will follow shortly thereafter, unless they shave.

52. In the absence of injunctive relief by this Court, plaintiffs will soon be discharged from the Department.

53. Plaintiffs have been removed from field operations and placed on administrative duties because they have observed their religious obligations regarding facial hair and beards. While on administrative duty status, plaintiffs suffer a major loss of pay because of the

manner in which Department personnel are compensated. Plaintiffs also suffer the loss of benefits and other terms and conditions of employment.

54. Plaintiffs have already suffered, and will continue to suffer, mental and emotional distress because of defendant's unlawful conduct.

## Claim for Relief

38. The Religious Freedom Restoration Act provides, in pertinent part, that:

> (a) Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
> (b) Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1.

39. The District of Columbia and its Department of Fire and Emergency Medical Services are subject to the commands of the Religious Freedom Restoration Act.

40. The Department's prohibition of beards substantially burdens plaintiffs' exercise of their religious beliefs by forcing them to choose between their jobs and their faith.

41. The Department's prohibition of beards is not the least restrictive means of satisfying any compelling interest of the defendant.

42. A less restrictive means of satisfying the Department's interest in safety is to allow plaintiffs to fit tests. If a plaintiff can pass the fit test, he is as safe as any other member of the Department.

43. Even if a plaintiff does not pass a fit test, a less restrictive means of satisfying the Department's interest in safety is for plaintiffs to use SCBAs or PAPRs (as appropriate to

each plaintiff's job and as appropriate to the conditions of a particular situation). Using an SCBA or a PAPR, a plaintiff is as safe as any other member of the Department.

44. The Department cannot satisfy its burden of showing that these or other feasible accommodations will not adequately satisfy its interest in safety.

44. The Department's refusal to accommodate plaintiffs' religious observances by using less restrictive means to satisfy the Department's interest in safety violates plaintiffs' rights under the Religious Freedom Restoration Act.

WHEREFORE, plaintiffs ask that this Court:

1. Declare, pursuant to 28 U.S.C. § 2201, that defendant's prohibition of facial hair violates plaintiffs' rights under the Religious Freedom Restoration Act;

2. Enter preliminary and permanent injunctions prohibiting the defendant, and its officers and agents, from discharging any plaintiff, or imposing any sanction or other adverse consequence against any plaintiff, on account of that plaintiff's facial hair;

3. Order, with respect to any time period for which plaintiffs are assigned to administrative duties on account of their facial hair, that they perform those duties on their regular schedules and be paid accordingly;

4. Make plaintiffs whole, with respect to pay, benefits, seniority, and all other terms and conditions of employment, for all losses resulting from their being removed from active duty because of their religious observances;

5. Award plaintiffs compensatory damages in an amount commensurate with the proof adduced at trial;

6. Award plaintiffs their reasonable costs and attorney fees; and

7. Grant plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____
Arthur B. Spitzer (D.C. Bar No. 235960)
Frederick V. Mulhauser (D.C. Bar No. 455377)
American Civil Liberties Union
  of the National Capital Area
1400 20th Street, N.W. #119
Washington, DC 20036
(202) 457-0800 (telephone)
(202) 452-1868 (facsimile)

Counsel for plaintiffs

September 9, 2005

15