UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN B. CHASIN, *et al*. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 05-1792 (JR) |
| v. | ) |
| | ) |
| THE DISTRICT OF COLUMBIA, | ) |
| | ) |
| Defendant | ) |
| | ) |

**DEFENDANT DISTRICT OF COLUMBIA'S OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

Defendant largely agrees with plaintiffs that the Court is familiar with the issues, both factual and legal, presented in this case by virtue of *Potter v. District of Columbia,* CA 01-1189 (JR) that has been pending before the Court for several years. For example, in *Potter* the Court determined that Special Order 20 of the District's Fire and Emergency Medical Service ("FEMS") furthers a compelling government interest for reasons as applicable in this case as in *Potter.* The District also agrees with plaintiffs that this Court may consider the record from the *Potter* case in deciding the instant motion for preliminary injunction.[1] The District incorporates and adopts its arguments set-forth in *Potter* Dkt. Entries 66, 67, 75 and 93 as well as arguments and evidence presented in the hearings in *Potter* of June 13, 2005 and August 1, 2005.

**THE FIRE CHIEF'S DECISION TO ENFORCE SPECIAL ORDER 20**

As a preliminary matter, plaintiffs take issue with the Fire Chief's decision to enforce Special Order 20 as to non-*Potter* employees with beards who claim exceptions

to the order under the Religious Freedom Restoration Act ("RFRA"). Plaintiffs go so far as to suggest that the Fire Chief's actions are in moral if not legal defiance of this Court's recently issued order requiring that the *Potter* plaintiffs be face-fit tested even though testing with beards is not in accordance with applicable Occupational Safety and Health Administration regulations. In fact, plaintiffs speculate that it might be the Fire Chief's need to prove that "despite this Court's orders, it is his word that is law in the Fire Department" that motivated his actions. Such assertions and speculation are both unfair and inaccurate.

As the record in *Potter* makes clear, it is the Fire Chief's position that allowing personnel to wear tight-fitting face masks while wearing beards that come between the face and the seal of the mask constitutes a safety hazard. This position is consistent with OSHA requirements and the policies of virtually every fire department in the country. While this Court can certainly enjoin the Fire Chief from implementing this policy based on the requirements of federal law, in the absence of such an injunction, it is the Fire Chief that remains responsible for the safety of his employees and the public. In short, absent an injunction from the Court, the Fire Chief has both a moral and legal obligation to exercise his own judgment on issues of safety.

At any rate, the Court's August 11, 2005 injunction in *Potter* noted that the District's position against testing with beards was based, at least in part, on the proposition that "variability of beard length and density from one day to the next makes face-fit tests of bearded firefighters impractical." *Potter* Dkt. 98 at 12. The Court's mandate that the three *Potter* plaintiffs be face-fit tested was not a rejection of this

---

[1] Indeed, while the District believes as set forth below that there are relevant factual distinctions between the plaintiffs here and in *Potter,* the legal issues in the two cases are so similar that consolidation should be

2

proposition but a finding that "nobody has tested that proposition on people with fully mature, grown-out beards." *Id.* As the photos attached to plaintiffs' declarations in support of the instant motion demonstrate, plaintiffs' beards are not "fully mature, grown-out beards" and all of the problems associated with testing individuals whose beards are variable, which the Court found unnecessary to address in *Potter* are clearly relevant in this case. Therefore, the results of the face-fit testing of the *Potter* plaintiffs and any determination by this Court of the legal relevance of those results, will not resolve the legal dispute between the *Chasin* plaintiffs and the District.

Under these circumstances it would be inconsistent with the Fire Chief's duty to protect firefighters, EMS employees, and the public at large, to simply allow employees to neither comply with a valid safety regulation nor challenge that regulation in court. That said, the undersigned, on behalf of the Fire Chief has made the following representation to plaintiffs' counsel. Those employees that have now challenged Special Order 20 in the instant suit will not be terminated until plaintiffs' preliminary injunction motion is resolved. If the instant request for injunction is denied, plaintiffs will be given the opportunity to come into compliance with Special Order 20 before being terminated.

## ARGUMENT

To prevail on the instant motion, plaintiffs bear the burden of demonstrating they are entitled to the extraordinary relief of preliminary injunction under the requirements of the familiar four-part test. *WMATC v. Holiday Tours, Inc.* 559 F.2d 841, 843 (D.C. Cir. 1977) Plaintiffs cannot establish that they are likely to succeed on the merits, that they face irreparable harm, or that the harm they face if the injunction does not issue

---

considered.

outweighs the potential harm to the defendants, the public, and indeed to plaintiffs' themselves, if the injunction does issue.

### Likelihood of Success

The ultimate question in this case is straight forward, as it is in *Potter*. Does Special Order 20 further a compelling governmental interest and is requiring plaintiffs to be clean-shaven at the point where there masks seal to their faces the least restrictive means for furthering that interest. This Court has already held that Special Order 20 furthers a compelling governmental interest, and, as to the *Potter* plaintiffs, withheld judgment on the question of whether Special Order 20 constitutes the least restrictive means of furthering that interest pending the outcome of a series of face-fit tests.

Plaintiffs' appear to make two separate arguments on this point. Strangely, plaintiffs' appear to argue first that there is no compelling state interest because there is no real danger addressed by the District's issuance of negative pressure filters.

First, plaintiffs' seem to argue that negative pressure filters are unnecessary because, as to the firefighter plaintiffs, the negative pressure mask isn't as good as the SCBA configuration, and, as to the paramedic plaintiffs being able to help injured people in a toxic environment is not part of their jobs. In short, plaintiffs' argue that the District has no compelling governmental interest in fielding negative pressure masks.

Plaintiffs' simply ignore the record. In *Potter* defendants submitted un-controverted evidence that the rupture of a single railroad tank of chlorine could generate a toxic cloud that could kill tens of thousands and result in the hospitalization of 100,000 people or more. If such an event happened during a major event on the Mall the results could be much worse. It is likewise un-controverted that if such a catastrophic event

4

occurred, SCBA's would not provide sufficient air to allow firefighters and EMS workers to adequately aid the injured. Against this background, plaintiffs' blithely assert that firefighter plaintiffs Conerly and Backer have no need of negative pressure filters. *Plts. Memo at 11*. Even more alarming the EMS plaintiffs take the position that respiratory protection is not an essential part of their jobs. *Id.* With all due respect to plaintiffs Chasin, Evans, Rashumaa and Sterling, that determination is for the Fire Chief, not them.

Plaintiffs also seem to argue that because no catastrophic event has required firefighters and paramedics to use negative pressure masks with filters, there is no need to require that firefighters and paramedics be able to use them. This makes as much sense as arguing that, since no Category 4 Hurricane has hit New Orleans in 100 years, there is no need to plan for one. The government has determined that it must prepare for a cataclysmic event, even if it is unlikely to occur. Neither plaintiffs, nor respectfully this Court, may second guess that determination.

Plaintiffs also argue that requiring that they be clean shaven at the point where the mask seals to the face is not necessary if they can pass the face-fit test with a beard. They rely on the Court's August 11, 2005 order in *Potter* for support. While this argument seems intuitive, it ignores the logistical problems of testing individuals whose beards may be one length this week and another next. A problem the Court acknowledged but found factually undeveloped for firefighters with mature beards. Defendants rely on their opposition to plaintiffs' motion for a permanent injunction in *Potter* as their response to plaintiffs' argument on this point and on the evidence presented at the August 1, 2005 hearing in *Potter* regarding the problems of repeatability in testing individuals with growing beards.

5

**IRREPARABLE INJURY**

Defendants acknowledge that plaintiffs have a hard choice between sincerely held religious beliefs and a profession they love. Hard as that choice is, it does not amount to legal irreparable injury. If plaintiffs lose their positions and ultimately prevail in this litigation they will be entitled to reinstatement and back-pay. If, on the other hand, the FEMS policy is up-held as to plaintiffs, they will have suffered no loss whatsoever.

That there can be no irreparable harm from financial losses, even if *substantial*, has been firmly established by the Supreme Court, the D.C. Circuit, and nearly every federal court of appeals. That overwhelming precedent holds that loss of income and its attendant financial consequences do not, *as a matter of law*, constitute irreparable harm. *Sampson v. Murray,* 415 U.S. at 90–91; *Virginia Petroleum Jobbers Ass'n*, 259 F.2d at 925; *Davenport,* 166 F.3d at 367; *Chilcott v. Orr,* 747 F.2d 29 (1st Cir. 1984); *Jayaraj v. Scappini*, 66 F.3d 36 (2nd Cir. 1995); *Kos Pharmceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 728 (3rd Cir. 2004); *Guerra v. Scruggs,* 942 F.2d 270 (4th Cir. 1991); *White v. Carlucci*, 862 F.2d 1209, 1212 (5th Cir. 1989); *Baker v. Adams County/Ohio Valley Sch. Bd.*, 310 F.3d 927, 930 (6th Cir. 2002); *Hetreed v. Allstate*, 135 F.3d 1155 (7th Cir. 1998); *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297 (8th Cir. 1996); *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994); *Tri-State Generation & Transmission Assn. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986); *Lifestar Ambulance Serv. v. United States*, 365 F.3d 1293, 1296 n.5 (11th Cir. 2004); *Mikohn Gaming Corp. v. Acres Gaming*, 165 F.3d 891, 898 (Fed. Cir. 1998).

**Harm to the District and Others**

If the Court allows the plaintiffs to continue on the job, despite the fact that they cannot meet federally established safety requirements nothing may happen. It may be that they will serve out their careers with distinction and never be in a position where they must wear a negative pressure mask. There remains however the possibility, even if as the Court believes a vanishingly small one, that the worst might occur. If it does and the plaintiffs cannot adequately respond because they cannot achieve an adequate seal on a negative pressure mask, it may cost them their lives, or the lives of a fellow firefighter or paramedic, or a member of the public. However small that chance, it vastly outweighs any loss of income to the plaintiffs.

Respectfully submitted,

**ROBERT J. SPAGNOLETTI**
Attorney General of the District of Columbia.

GEORGE C. VALENTINE
Deputy Attorney General for
 Civil Litigation

/s/ Robert C. Utiger
ROBERT C. UTIGER [437130]
Senior Counsel to the Deputy for
 Civil Litigation
P.O. Box 14600
Washington, D.C. 20001
(202) 724-6532