UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN B. CHASIN, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 05-1792 (JR) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |
| ) | Consolidated with |
| ) | |
| CALVERT POTTER, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 01-1189 (JR) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN OPPOSITION OF PLAINTIFFS' MOTIONS TO
REINSTATE PLAINTIFFS TO FIELD DUTY[1]**

On August 11, 2005, this Court issued an order and memorandum opinion finding that the District's requirement that employees of the District's Fire and Emergency Medical Service ("FEMS") be clean-shaved at the point where their protective face pieces seal to their faces furthers a legitimate governmental safety interest. *Memo. Op.* at 9. The Court also found that neither the District nor the plaintiffs had carried the day on a threshold question, can firefighters with growing beards establish that they can consistently pass face-fit tests. The Court therefore ordered that the District provide

---

[1] Based on the Court's admonition in its order of consolidation that the parties coordinate litigation of these two matters to the extent practical, the District submits a single opposition to the *Chasin* and *Potter* plaintiffs' motions on this issue.

plaintiffs with the opportunity to demonstrate that they can consistently pass face fit tests with their growing beards. *Memo. Op.* at 14. The Court left to the District the manner in which this opportunity should be given. *Id.* On November 11, 2005 the Court entered a similar order in the *Chasin* matter.

Over the last several months the District has conducted a series of face-fit tests for the plaintiffs' at roughly one month intervals.[2] Based on a selective and partial characterization of the results of these tests plaintiffs now contend that all of the plaintiffs except Mr. Umrani have demonstrated that they can consistently pass face-fit tests while wearing beards and should be returned to full field duty. Stunningly, plaintiffs' also assert that two plaintiffs who rejected the Court ordered opportunity to demonstrate that they can consistently pass the face-fit test while wearing beards should nevertheless be placed back on field duty. As demonstrated below, plaintiffs request should be rejected for the simple reason that the *full* test results demonstrate conclusively that individuals with beards *cannot* consistently pass face-fit tests.

## TEST RESULTS[3]

### *POTTER PLAINTIFFS*

Defendants concede that Plaintiffs Potter and Ali, after achieving a passing score on their first set of face-fit tests, indeed passed three subsequent face-fit tests using the same face mask. That said, plaintiffs ignore the fact that one of the *Potter* plaintiffs Mr. Umrani was tested with every available mask size and never achieved a passing score.

---

[2] While the District would have preferred to have the testing done by an outside testing organization, it could not find an organization willing to test individuals with beards and so conducted the tests using FEMS personnel.
[3] Attached as Exhibit A is a chart summarizing the test result for all plaintiffs. Plaintiffs have provided the Court with the computer printouts of the tests passed by plaintiffs. Attached as Exhibit B are the *complete* test results.

## CHASIN PLAINTIFFS

*Chasin.* Plaintiff Chasin participated in the testing protocol envisioned by the Court in its prior orders. That is, he did not shave during the term of the test and was tested over a period of time. On November 3, 2005 Mr. Chasin passed a face-fit test with a score of 6250. He also passed on December 13, 2005 with a passing score of 4640. By January 11, 2006, the last test administered, Mr. Chasin's passing score had dropped to 2190. The clear trend is that as Mr. Chasin's beard grows the seal on his face-piece deteriorates with the likelihood that within a few months he will not be able to achieve a passing score. Certainly this record cannot conceivably be construed to demonstrate that Mr. Chasin can consistently pass face-fit tests in the future while wearing a beard.

*Conerly.* Contrary to plaintiffs' assertions, Mr. Conerly failed to demonstrate that he can consistently achieve an adequate seal under the process established under the Court's order while wearing a beard. On November 11, 2005 Mr. Conerly passed a face fit test wearing an AV-2000 X-large with a score of 1290. By December 13, 2005 Mr. Conerly's test score wearing an AV-2000 X-Large mask had dropped to 542, barely passing. On January 11, 2006, *plaintiff could not pass using the same face-piece he had passed with at the two previous tests.* Only when retested using other face-pieces was he able to pass, this time wearing an AV-3000 Medium and again with a barely passing score of 565. Had Mr. Conerly responded to a large scale chlorine spill instead of an administrative face-fit test on January 11, 2006, it is likely that, instead of helping injured citizens, he would have himself been a casualty. Mr. Conerly's test results lead to only one possible conclusion, he cannot consistently pass a face-fit test, or more importantly, safely wear his face-piece, while wearing a beard.

*Rashumaa.*  Mr. Rashumma passed a face-fit test on November 3, 2005 wearing an AV-2000 X-Large with a score of 1350.  On December 13, 2005 Mr. Rashumaa could not pass using the same mask and could only achieve a passing score when issued a different size mask.  He "passed" wearing an AV-3000 Medium with a score of 1120.  A month latter, on January 11, 2006 Mr. Rashumma again passed wearing an AV-3000 Medium although his score had dropped to 866.  Had Mr. Rashumma responded to a major event involving a chlorine spill on December 13, 2005, instead of an administrative face-fit test, he could not have safely worn his issued face-piece.  His test results clearly demonstrate that he failed the process established to determine whether or not he could *consistently* pass a face-fit test, and more importantly safely perform his duties, while wearing a beard.

*Sterling.*  Mr. Sterling passed a face-fit test on November 10, 2005 wearing an AV-3000 Medium with a score of 10300.  On December 13, 2005 he again passed wearing the same face-piece with a score of 7370.  By January 11, 2006 his score had dropped to 6950 wearing the same face-piece.  In short, during a two month period while Mr. Sterling grew his beard, his face-fit score dropped by more about a third.

*Evans.*  Mr. Evans did not participate in the testing program established by the District in accordance with this Court's order.  Instead, Mr. Evans participated in a face-fit test on November 3, 2005 and achieved a passing score of 6960.  He then promptly shaved so that he could return to field duty.  On December 13, 2005 he again took the face-fit test, this time with a few days growth of beard and passed with a score of 13,700.  While these results certainly do not establish that Mr. Evans can consistently pass a face-

4

fit test with a beard, they certainly suggest that he is much safer with no beard or a few days stubble than he is with a full beard.

*Baker.* Mr. Baker has remained clean-shaven so that he can stay on full field duty. He has not demonstrated, as required by this Court's orders, that he can consistently pass a face-fit test while wearing a beard.

## ARGUMENT

The Court directed that the District establish a testing program to allow plaintiffs to demonstrate that they can *consistently* pass a required face-fit test while wearing their growing beards. To that end, the District conducted a first face-fit test to "size" a face-piece for each plaintiff that would allow them to achieve a passing score. Subsequent tests were conducted to determine if plaintiffs, while growing their beards, could *consistently pass with their issued face-piece.* Four plaintiffs, Messers. Ali, Chasin, Potter, and Sterling passed all of the subsequent tests. One plaintiff, Mr. Umrani, could not achieve a passing result with any face-piece. Two others, Messers. Conerly and Rashumaa, having achieved marginally passing scores on the first test and being issued a face-piece based on those tests, could not pass subsequent tests with their issued face-pieces. Plaintiffs Baker and Evans refused to participate in the Court ordered testing program. And yet plaintiffs' assert that all of the plaintiffs, accept Mr. Umrani, should be returned to full field duty.

On September 9, 2005 the District submitted the Declaration of Roy T. McKay, PH.D. (*Chasin* Dkt. Entry 8 incorporated herein by reference*)* in support of its opposition to *Chasin* plaintiffs' motion for temporary injunctive relief. Based on 25 years of experience in the field of respiratory protection, a review of the scientific literature

5

addressing facial hair and tight fitting face-pieces and a review of regulations that uniformly prohibit allowing facial hair at the point wear the face-piece seals to the face, Prof. McKay opined that facial hair at the point of seal poses an unacceptable risk. *McKay Decl.* ¶ 20.   The test results at issue in plaintiffs' motions to reinstate are completely consistent with Dr. McKay's opinion.

Significantly, Dr. McKay did not base his opinion solely on the proposition that the changing nature of a growing beard caused "repeatability" of test result problems. Rather, Dr. McKay's opinion recognized beards cause "leakage that is variable in nature and can change significantly from one *donning* to another." McKay Decl. at ¶ 10 (emphasis added)  Based on this as yet unchallenged expert opinion, not even plaintiffs' Ali, Potter, Chasin and Sterling should be returned to field duty.  Beards can affect the seal of a face-piece from "one donning to another."  That these four plaintiffs passed the face-fit test three times over three months does not mean that they would have consistently passed on every donning during the three month testing period.  It particularly does not mean that their beards would not have caused an unacceptable leakage if they had had to done their face-pieces in a real world environment as opposed to the orderly procedures in a testing setting.   The aggregate test results support the universal conclusion of federal safety regulations and the only expert evidence in this case, facial hair at the point of seal of a face-piece presents an unreasonable risk and should not be allowed.

Plaintiffs throughout this litigation have, without real support, espoused the conclusion that facial hair at the point of seal does not affect the quality of seal of a tight fitting face-piece.  Of the seven individuals who took part in the Court ordered test

6

process, three could not consistently pass the face fit test, or over 42%. In contrast, of the over 1800 personnel who took the face-fit test without facial hair, *all* passed. Plaintiffs cannot seriously suggest the facial hair does not have a real, significant and negative impact on the ability of firefighters and emergency medical personnel to safely wear tight fitting face-pieces. The District's regulation forbidding facial hair at the point of seal of a face-piece is a legitimate and rational safety regulation based on assumptions firmly rooted in science. Nothing in the results of the fit-testing program conducted by order of the Court supports exempting any of the plaintiffs from this requirement.

## CONCLUSION

For all these reasons, plaintiffs' request to reinstate plaintiffs to full field duty should be denied. Defendant requests oral argument on plaintiffs' motions.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Robert C. Utiger**
ROBERT C. UTIGER [437130]
Senior Counsel
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001

**/s/ Eden I. Miller**
EDEN I. MILLER [#483802]
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001