UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN B. CHASIN, *et al.*,

          Plaintiffs,

v.

DISTRICT OF COLUMBIA,

          Defendant.

No. 05-cv-1792 (JR)

**PLAINTIFFS RASHUMAA'S AND CONERLY'S MOTION
FOR AN ORDER DIRECTING THE FIRE DEPARTMENT
TO GIVE THEM PROPER FIT TESTS**

    Plaintiffs Shango Kwame Rashumaa and Kevin Conerly hereby move for an order directing the Fire Department to give them proper fit tests in place of the improperly conducted, lawyer-influenced tests they were recently given and allegedly failed. The defendant does not consent to the relief requested in this motion.

**Points and Authorities**

    On March 20, this Court entered an order [23] directing the Fire Department to restore these two plaintiffs (and four others) to active duty, on condition that "within 30 days of this order, and every 30 days thereafter, plaintiffs take and pass the applicable face-fit test for their negative pressure masks."

    These two plaintiffs were fit tested on March 23 and 27, respectively. The Department claims they failed the tests. But the tests they were given were conducted in a manner sharply contrary to normal practice, and improperly truncated by the Department's lawyers to assure a failing score. Accordingly, these plaintiffs ask the Court to order a "do over."

**1. The facts regarding Mr. Rashumaa.**

Mr. Rashumaa's Third Declaration in this case, filed herewith, recounts his experience:

On March 23, 2006, I rose up about 0430 hours. As part of my daily routine, I applied some vanilla oil on my chin and some geranium and peppermint essential oils to my beard and hair and my headwrap.

I then bicycled to work, reporting for duty at Engine 16 at 0600 hours. Engine 16 was my Administrative Duty assignment. While at Engine 16, I had some breakfast that I had brought with me, consisting of kale salad with lots of garlic and some seaweed salad. I also had a smoothie, which I had brought from home, which included bananas, strawberries, blueberries, rolled oats and spirulina (a high-protein powdered sea algae). I would estimate that I had this smoothie at about 0745.

At about 0755 a call came in from headquarters telling me to report to Engine 4 for a fit test, ASAP. I promptly reported to Engine 4.

On previous occasions when I have taken a face mask fit test I have received at least 24 hours advance notice from the FEMS Department, and I have been required to sign a form at that time stating "You may not apply oils, lotions, or creams to your facial hair 24 hours prior to the test" and "You may not eat or smoke 30 minutes prior" to the test. On March 23, 2006, I had no advance notice from the Department that I would be subjected to a fit test.

At Engine 4, I informed Sheila Scott, the technician who performs the tests, about the oils I had put on that morning and that I had eaten breakfast at Engine 16. She said, "I don't know if I'd test you," or words to that effect. But I was eager to get the test over with so I could return to active duty for the first time in many months, and said I wanted to do the test.

Also present in the room were Thesesa Cusick, a lawyer with the FEMS Department, DC Assistant Attorney General Eden Miller, and a FEMS safety officer whose name I don't know.

Within approximately 40 seconds of beginning the test, before the first phase was over, the machine aborted the test. I had a score of 45.

Sheila Scott was telling me to readjust my mask to try again when Ms. Cusick intervened and directed her not to retest me.

Ms. Cusick and Capt. William Flint tried to talk me into signing the form showing that I had failed the test, but I refused to sign because I did not think I had been given a fair test. See Exhibit A hereto.

In my opinion, the Department should have given me 24 hours advance notice of the test, as it always had done in the past, so that I would have known not to apply oils to my face and hair and not to eat and drink a smoothie before the test. I believe the Department should have refused to test me after I told Ms. Scott about the oils I'd applied to my face and hair that morning and about what I'd eaten approximately an hour earlier.

**2. The facts regarding Mr. Conerly.**

Mr. Conerly's Second Declaration in this case, filed herewith, recounts his experience:

On March 27, 2006, I reported for duty at approximately 6:30 a.m. at the Fire Department's Apparatus Division ("the shop"), where I had been performing my "administrative duty" during the previous several months.

At approximately 8:00 a.m., I was ordered to report to Engine 4 to take a face mask fit test. The Department had given me no previous notice of this test.

On all previous occasions on which I was fit tested, I had been notified of the test at least 24 hours earlier and required to sign a form acknowledging that I was not to eat or smoke for at least 30 minutes prior to taking the test. I had not been given this form on March 26, nor was it given to me on March 27. I understand that the reason for not eating or smoking is that particles from the food or tobacco can be measured by the test and can cause a person to fail.

At approximately 6:00 a.m. on March 27, I had taken Flonase at home before leaving for work. Flonase is a prescription steroid medication which is

3

inhaled as a nasal spray. I don't know whether the Flonase spray that I took that morning may have interfered with the accuracy of the test.

After reporting to Engine 4, I proceeded to take the fit test. Present with me in the room were Sheila Scott, the technician who conducts the test, Capt. William Flint, Theresa Cusick, who I understand is a lawyer with the Fire Department, and Assistant D.C. Attorney General Eden Miller.

The first phase of a fit test is called "normal breathing." I scored only 120 during that phase and Sheila Scott said "you're not gonna pass." I asked to stop and tighten my mask, and she said "we'll see," which I understood to mean that I should continue with the test for the time being. During the second phase, which is called "deep breathing," the machine's "Abort" light came on. Attorney Cusick said "the test is over!"

When I removed the mask from my face, I saw that the little hose that connects the mask to the computer was not attached to the mask. I don't know at what point during the test it had become detached. I pointed this out to Sheila Scott, who said "usually it doesn't do that," or words to that effect. Ms. Scott wanted to re-attach the hose and re-start the test, but Attorney Cusick asked her to step out of the room with her. When they came back, Ms. Cusick said the test was over. I was not allowed to try again.

### 3. Plaintiffs Rashumaa and Conerly were not given a fair opportunity to pass their fit tests.

The facts recounted above speak for themselves.

Regarding Mr. Rashumaa, it is highly likely that the grooming oils he applied to his face that morning and the highly aromatic food he ate shortly before his fit test caused him to fail the test—why else does the Department notify all members at least 24 hours before a fit test that they are not to apply oils, lotions, or creams to their faces within 24 hours of the test, and are not to eat or smoke within 30 minutes of the test? But the Department gave Mr. Rashumaa no notice of this test.

4

The Fire Department was responsible for administering a proper test, and when Mr. Rashumaa informed the technician who was about to test him that he had applied oils to his face that morning and had eaten highly aromatic food shortly before the test—having been given no 24-hour notice as in the past—it was the Department's responsibility to postpone the test.

Even worse, when the responsible technician began to respond appropriately to the testing machine's almost immediate abort of the test, the Fire Department's in-house counsel intervened and directed her not to do so. That was unprecedented and inappropriate. These tests were not supposed to be conducted by counsel.

The Department may conceivably argue that firefighters would not receive 24 hours notice of an emergency, and might therefore be dangerous to themselves and others if they had applied oils to their skin, smoked or eaten garlic. But such an argument would be plainly wrong, because while such actions might cause a person to fail a fit test, they would *not* interfere with the proper seal of a face mask while on duty.

The fit test measures particles inside the face mask. The test does not distinguish *where* those particles come from. Particles coming from the subject's face, or from his mouth or nose, will be measured the same as particles coming from the outside air. In the field, by contrast, only particles coming from the outside air may create a hazard. That is why firefighters are not prohibited from using creams or oils on their faces, or eating garlic, or smoking as part of their normal daily routine. *See, e.g.,* Tr. of 30(b)(6) Deposition of D.C. Fire Dep't at 162 (Ass't Chief Fitzgerald) (stating that the Department has no policy prohibiting smoking, even on duty).

Regarding Mr. Conerly, it seems most likely that his test aborted because the hose that connects the face mask to the computer was lose during phase 1 and become detached from his mask during phase 2. In-house counsel's intervention to prevent the responsible technician from re-attaching the hose and re-starting the test was highly irregular. It is also possible that the prescription steroid nasal spray he took that morning—not having been notified about the test—might have interfered with his score. The purpose of the test was to give Firefighter Conerly a fair opportunity to pass—not to achieve a litigation victory by exploiting malfunctioning test equipment in order to make him fail.

## Conclusion

For the reasons given above, the Court should grant this motion, should order the defendant to cancel the results of plaintiffs Rashumaa's and Conerly's aborted March 23 and March 27 fit tests, and should order the defendant to provide these plaintiffs with an opportunity to take fair and proper face mask fit tests. The order should further provide that the plaintiffs and their counsel shall be given at least 24 hours advance notice of their tests, that defendant's counsel shall instruct the person performing the tests to administer them in the same manner as she has administered and would administer fit tests to all other Department members, and that defendant's counsel shall not intervene in the conduct of these tests.

A proposed order with these provisions is filed herewith.

        Respectfully submitted,

            /s/
_____
Arthur B. Spitzer (D.C. Bar No. 235960)
Frederick V. Mulhauser (D.C. Bar # 455377)
American Civil Liberties Union
  of the National Capital Area
1400 20th Street, N.W. #119
Washington, DC 20036
(202) 457-0800

Counsel for plaintiffs

April 11, 2006