UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CALVERT L. POTTER, *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>  Defendant. | No. 01-cv-1189 (JR) |
| STEVEN B. CHASIN, *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>  Defendant. | No. 05-cv-1792 (JR) |

**MOTION FOR CLARIFICATION OF ORDER OF MARCH 20, 2006**

Plaintiffs hereby move the Court to clarify the meaning of the order entered in these cases on March 20, 2006 [*Potter* 111; *Chasin* 23]. The defendant does not consent to the relief requested in this motion.

**Points and Authorities**

At the conclusion of the March 14, 2006, hearing in these cases, the Court announced that it would order the defendant to return to active duty the six plaintiffs who had shown that they could consistently pass face mask fit tests. March 14 Tr. at 51. The Court stated, "it's a zero tolerance test. Flunk the test, you're off the truck." *Id*.

Plaintiff's counsel asked for a clarification: "if a plaintiff doesn't pass the test, he's off the apparatus, as you said, zero tolerance. Does that mean for the rest of the case

or does he get to be tested again three [*sic*; should be thirty] days later and if he passes he can come back on?" *Id.* at 53. The Court responded: "Let's cross that bridge when we come to it. Since you're so confident they're going to pass the test, it probably won't be an issue." *Id.*

According to the defendant, two of the plaintiffs (Mr. Rashumaa and Mr. Conerly) have now failed a fit test. That allegation is disputed. Plaintiffs Rashumaa and Conerly have today filed a motion showing that the fit tests they were given were not proper and asking the Court to order the Fire Department to give them proper fit tests. However, if the Court does not grant that relief, the parties will need to know whether these plaintiffs are to be tested again, and whether they are to be restored to active duty if they pass. The same question will arise if any other plaintiffs fail—or are deemed by the Fire Department to have failed—a fit test while the March 20 order remains in effect. Defendant's counsel has made it clear in discussions with plaintiffs' counsel that, absent a further order by the Court, the Fire Department will not again test any plaintiff who has once failed a fit test.

**1. The plaintiffs should be tested every 30 days.**

The defendant's unilateral interpretation of the March 20 order creates an unfair one-way ratchet in both the treatment of the plaintiffs and in the collection of evidence relevant to the central issue in this case. A plaintiff who once fails a fit test will be viewed as having failed permanently, foreclosing the equally likely finding that he could pass every subsequent test. Yet a plaintiff who passes test after test will never be viewed as having satisfactorily passed, and must continue to be tested every month. Aside from the separate question of whether a plaintiff should be restored to active duty after passing

2

a subsequent test (addressed below), continued testing will provide both the parties and the court with useful evidence that may favor the plaintiffs or the defendants in this case—just like the series of three monthly tests that were conducted under the Court's earlier orders, which were to continue regardless of whether an individual passed or failed a given test. There is simply no sensible reason not to conduct the tests and gather the data.

**2. A plaintiff who passes a subsequent test should be restored to active duty.**

The defendant's position is that if a clean-shaven employee passes a single fit test he or she is presumed to be safe for at least a year, while if a bearded employee fails a single fit test he is presumed to be unsafe forever. That position rests on the unfounded assumption that all clean-shaven firefighters who pass one fit test can thenceforth obtain an adequate seal with their face masks for at least a year (absent some dramatic and obvious change in weight or facial structure that would cause an officer to send the member to the testing site for a new test), but that bearded firefighters will never be presumed able to obtain a good seal, even after they have shown that they can by consistently passing a series of tests.

The evidence adduced in this case so far shows that defendant's assumptions are not established, to say the least. Fully *one-third* of the clean-shaven firefighters and paramedics who took the Department-wide fit tests last summer were unable to pass until they were issued new face masks. *See* Tr. of Aug. 1, 2005, hearing, at 105 (testimony of Capt. Flint). Yet while insisting that one failing test should disqualify a bearded member forever, the Department has made *no* effort, by follow-up testing, to ascertain whether all of its clean-shaven members can *consistently* obtain a good fit. Once a member passed

his or her fit test—even with a barely passing score of 501 or 502[1]—the member was assumed to be safe for at least a year.

As the Court knows, for three years before and nearly four years after September 11, 2001, the Fire Department conducted *no general fit testing* of its members, despite the Department's professed (in this litigation) urgent concern that *even a single member* who could not obtain a good facemask seal would endanger the Capital of the Free World.  Tr. of August 1, 2005, hearing, at 105 (Capt. Flint).  As Capt. Flint's testimony showed, *one-third* of the members could not have obtained a good seal had a toxic emergency occurred on, say, Inauguration Day 2005.  Yet it was not the fear of a terrorist attack that drove the Fire Department to conduct general fit testing in the summer of 2005, but the fear of having three bearded Muslim firefighters (the *Potter* plaintiffs) working in the Department.

However, the real lesson of the Department's seven years without fit testing is that even though *one-third of the Department* was working with ill-fitting masks, *not a single firefighter* suffered death or injury as a result of respiratory protection failure.  In other words, the positive-pressure breathing apparatus worked exactly as designed to protect the wearer—as it would work, and as it has worked for many years, to protect the plaintiffs.

Based on this evidence and the rest of the record, it is equally fair to assume that a plaintiff who has *just* passed a fit test will be able to obtain an adequate seal for the next 30 days as it is to assume that a clean-shaven firefighter or paramedic who has not passed

---

[1] The passing score is 500.  Eleven Department members passed their tests last year with scores *below 530*.  *See* Plaintiffs' Opposition to Defendant's Motion to Stay, at 8 n.6, and data cited therein.

4

a fit test for nine or ten months will be able to obtain an adequate seal for the next 30 days.

It is also fair to assume (1) that there will probably not be a massive toxic disaster during the pendency of the current appeal—indeed the defendant concedes this, *see* Defendant's Motion for Stay at 7; (2) that even if there is such an incident, there will be no need for Department members to use their negative-pressure Go-bag filters, *which are of no use* in a toxic environment anyway;[2] (3) that the presence of one or two or even a handful of Department personnel who cannot obtain a good face mask seal will not endanger the public safety of the District of Columbia; and (4) it is just as likely that the handful of personnel who cannot obtain a good face mask seal will be clean-shaven as that they will be bearded.[3]

Moreover, it serves the public interest to keep the plaintiffs on active duty, because it is only when they are on active duty that they can keep their skills polished for the benefit of the people of the District of Columbia. While on duty, a member's skills are maintained and improved both through daily use and through regular in-service training. *See* Declaration of Kenneth Lyons, filed today with plaintiffs' opposition to defendant's Motion for Stay Pending Appeal. Assuming the possibility that the plaintiffs may prevail in this case—as suggested by the Court's orders to date—their co-workers and the people they serve will be better off if they are allowed to maintain and improve

---

[2] *See* Tr. of Aug. 1, 2005, hearing at 81-82 (testimony of Ass't Chief Fitzgerald).

[3] As noted in the Declaration of Kenneth Lyons, filed today with plaintiffs' opposition to defendant's Motion for Stay Pending Appeal, the Department is aware that some Go-bag filters are likely to be unsuitable for use, but has not provided members with backup filters in their Go-bags. Thus, the Department cannot be confident that in an emergency its clean-shaven members will be able to use their Go-bag respirators.

their skills during the pendency of this litigation by being placed on active duty if they have passed their most recent fit test.

## Conclusion

For the reasons stated above, the motion for clarification should be granted. The Court should specify (i) that a plaintiff who fails a fit test conducted pursuant to the order of March 20, 2006, in this case shall continue to be tested every 30 days for the duration of that order, and (ii) that a plaintiff who fails a fit test but subsequently passes a test shall at that time be restored to active duty pending the next test.

A proposed order is filed herewith.

Respectfully submitted,

/s/
_____
Arthur B. Spitzer (D.C. Bar No. 235960)
Frederick V. Mulhauser (D.C. Bar No. 455377)
American Civil Liberties Union
   of the National Capital Area
1400 20th Street, N.W. #119
Washington, DC 20036
(202) 457-0800

*Counsel for Plaintiffs*

/s/
_____
William D. Iverson (D.C. Bar No. 88872)
Joshua A. Doan (D.C. Bar No. 490879)
Covington & Burling
1201 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 662-6000

*Counsel for Plaintiffs in No. 01-1189*

April 11, 2006