UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN B. CHASIN, *et al.*,

        Plaintiffs,

v.

DISTRICT OF COLUMBIA,

        Defendant.

No. 05-cv-1792 (JR)

**PLAINTIFFS EVANS' AND BAKER'S MOTION
FOR INJUNCTION PENDING APPEAL**

Pursuant to Fed. R. Civ. P. 62(c), plaintiffs Dwight Evans and Eleon Baker hereby move for an injunction pending appeal of this Court's oral order of March 14, 2006, denying their motion for a preliminary injunction permitting them to re-grow their beards while remaining on active duty. The defendant does not consent to the relief requested in this motion.

**Background**

Unlike the other four plaintiffs in this case, paramedic Dwight Evans and firefighter Sgt. Eleon Baker have been on active duty in recent months because they shaved their beards, in disobedience to their sincerely held religious beliefs. They took this drastic step in order to return to active duty work, because they could not afford to remain on "administrative duty" for an extended period of time, given the serious reduction in pay that administrative duty entails. *See* Second Declaration of Dwight Evans; Second Declaration of Eleon Baker.[1]

---

[1] Those previously-filed declarations [14] are being re-filed with this motion for the Court's convenience.

As part of plaintiffs' motion for reinstatement, plaintiffs Evans and Baker asked the Court to allow them to re-grow their beards, while remaining on regular duty and taking fit tests, "because otherwise they will be put in the cruel position of being forced to choose between quitting their jobs (which they have held for more than 30 and 20 years, respectively) or violating their religious beliefs for the indefinite future, as they remain unable to take a major cut in pay for a period of three months or longer." Motion for Reinstatement [14] at 4.[2] The requested relief would have put these two plaintiffs in the same position as the other *Chasin* plaintiffs, following the Court's March 20, 2006, order.

However, at the conclusion of the March 14 hearing in this case, the Court denied the relief requested by these two plaintiffs. *See* Transcript of Mar. 14 Hearing [25] at 52-53.[3] Plaintiffs Evans and Baker have filed an appeal from that ruling [28], and now seek an injunction allowing them to re-grow their beards while continuing to serve in field operations, subject to monthly fit testing, pending appeal.

**Points and Authorities**

In order to obtain an injunction pending appeal, a party must show "(1) that it has a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury if the stay is denied; (3) that issuance of the stay will not cause substantial harm to other

---

[2] In fact, the other Chasin plaintiffs were forced to remain on administrative duty at low pay for more than five months between the preliminary injunction hearing on October 11, 2005, and the order directing their reinstatement to regular duty on March 20, 2006.

[3] The Court's only stated reason was "they've shaven, they're out of the game for the preliminary injunction phase." Tr. 53. In order that the Court's order regarding plaintiffs Evans and Baker will appear on the docket, plaintiffs respectfully suggest that the Court enter a written order reflecting its oral ruling. For the Court's convenience, we have attached to this motion a draft order reflecting the Court's oral ruling.

2

parties; and (4) that the public interest will be served by issuance of the stay." *United States v. Philip Morris, Inc.*, 314 F.3d 612, 617 (D.C. Cir. 2003) (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)). Plaintiffs Evans and Baker have made the necessary showing.

**1. Plaintiffs Evans and Baker are likely to succeed in their appeal.**

Plaintiffs Evans and Baker are likely to succeed in their appeal because excluding them from the relief given to the rest of the *Chasin* plaintiffs perpetuates a violation of the Religious Freedom Restoration Act (RFRA) by the District of Columbia.

The key point to bear in mind is that under RFRA, it is *the government's* burden to show, *with evidence*, that its action burdening a person's exercise of religion is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. §§ 2000bb-1(b); 2000bb-2(3). The compelling interest involved in this case is safety, but there is no *factual* evidence in this record to support the government's theory that plaintiffs Evans and Baker are unsafe because they cannot consistently pass a face mask fit test. The factual evidence is just the opposite.

Regarding plaintiffs Evans and Baker themselves, the evidence is that Paramedic Evans has successfully passed *three* fit tests while wearing his beard, and has never failed a fit test; Firefighter Sgt. Baker has successfully passed one fit test while wearing his beard, and has also never failed a fit test.[4] The evidence regarding the plaintiffs as a

---

[4] Paramedic Evans passed fit tests with his beard in November and December 2006 with scores of 6960 and 13,700, respectively. *See* fit test results attached to Declaration of Jessica Langley, filed January 12, 2006 [14]. He had previously passed a fit test with his beard when he was first issued a face mask in late 2001 or early 2002. *See* Declaration of Dwight Evans, ¶ 3 [3].

Sergeant Baker passed the fit test with his beard in July, 2005, as part of the Department-wide fit testing that was conducted at that time. *See* Declaration of Eleon Baker, ¶ 6 [3]. Of course, clean-shaven firefighters who passed the fit test at that time have not been required to show that they can again pass the fit test between then and now.

whole supports the same conclusion, as most of the plaintiffs in this case and the *Potter* case have successfully passed their fit tests on multiple occasions while wearing their beards.[5]

The fact that there are not a greater number of fit test results for plaintiffs Evans and Baker cannot be held against them, for in the absence of evidence it is the Fire Department that cannot carry *its* burden. Moreover, it is the Department that has refused to conduct fit tests on bearded firefighters and paramedics; the Department has no one to blame but itself for the absence of the evidence that—according to its hypothesis—would enable it to prove its case.

On the current state of the record, therefore, plaintiffs Evans and Baker are likely to succeed in their appeal.

> **2. Plaintiffs Evans and Baker will suffer irreparable injury absent an injunction**.

In the Religious Freedom Restoration Act, Congress authorized the courts to enter "appropriate relief" against the government to protect individuals in the exercise of their religious beliefs. 42 U.S.C. § 2000bb-1(c). It has never been doubted that "appropriate relief" included injunctive relief,[6] and thus Congress necessarily recognized that being forced by the government to violate one's religious beliefs constitutes irreparable injury. That congressional determination is entitled to respect here, just as it would be in any other context (*e.g.*, antitrust or patent law) where Congress authorizes injunctive relief for the violation of statutory standards. This Court has applied that standard in this case by

---

[5] *See* fit test results attached to plaintiffs' motions for reinstatement [*Potter* 103; *Chasin* 14].

[6] The only uncertainty was whether it also included money damages, *see, e.g., Jama v. INS*, 343 F. Supp. 2d 338, 371-76 (D.N.J. 2004).

4

granting injunctive relief to the plaintiffs who showed that they could pass a series of fit tests between October 2005 and January 2006.  *See* Order of March 20, 2006 [23].

The uncontradicted evidence in the record shows that in the absence of an injunction permitting them to re-grow their beards while remaining on active duty, plaintiffs Evans and Baker will never have an opportunity to demonstrate that they can repeatedly pass fit tests with their beards, because they cannot afford the substantial loss of pay that would be involved in going on administrative duty for four or five months in order to take those tests.  *See* Second Declaration of Dwight Evans; Second Declaration of Eleon Baker.  Thus, the Court's denial of their motion to remain on active duty while re-growing their beards means that plaintiffs Evans and Baker have been suffering irreparable harm, and will continue to suffer irreparable harm, because they are forced to violate their religious beliefs every day in order to remain on the job and earn the income they need to support their households.[7]

### 3. Entry of an injunction pending appeal will not cause substantial harm to the District of Columbia.

It is vanishingly unlikely that substantial harm will befall the District of Columbia if the Court allows plaintiffs Baker and Evans to remain on active duty and re-grow their beards—subject to passing a fit test every 30 days—while their appeal is pending.

Regarding Mr. Evans, the Court is aware that no paramedic has *ever* been required to use his facemask on the job.  Declaration of Steven B. Chasin, ¶ 7 [3].  Paramedics are not trained to enter hazardous IDLH atmospheres, and are not authorized to do so.  *Id.*, ¶ 5.  Mr. Evans has passed three consecutive fit tests with his beard, with

---

[7] As the Court knows, it is uncontested that plaintiffs' sincere religious beliefs require them to wear beards.  *See* Declaration of Dwight Evans [3]; Declaration of Eleon Baker [3].

5

very high scores on the two tests for which we know the scores. *See* footnote 4, *supra*. No serious argument can be made that the District of Columbia will be harmed by allowing Mr. Evans—a 30-year D.C. Fire Department veteran—to remain on the job with the beard that he wore safely as a D.C. paramedic from 1975 until last summer. *See* Declaration of Dwight Evans [3].

Likewise, no serious argument can be made that District of Columbia will be harmed by allowing Sgt. Baker to remain on the job and re-grow his beard, subject to fit testing every 30 days. Sgt. Baker wore his beard as a D.C. firefighter for nearly 20 years without any safety problem. Baker Declaration ¶ 5 [3]; Baker 2d Declaration ¶ 6 [14]. He passed a fit test with his beard just as recently as all of the clean-shaven firefighters in the Department. *Id*. And even in the highly unlikely event that some terrorist incident occurs during the pendency of his appeal, there is no reason to believe that he will be unable to respond the same as any other firefighter, using his much safer positive-pressure self-contained breathing apparatus (SCBA), or, in the hypothetical situation where the "Go bag" filters must be used, with the negative pressure mask that he has shown he can wear safely.

4. **Issuing an injunction pending appeal will serve the public interest**.

In enacting the Religious Freedom Restoration Act, Congress declared it to be the public policy of the United States that "governments should not substantially burden religious exercise without compelling justification." 42 U.S.C. § 2000bb(a)(3). Because the District of Columbia has failed to demonstrate any compelling justification for forcing plaintiffs Evans and Baker to choose between keeping their jobs and practicing their faiths, the public interest lies in allowing them to do both.

## Conclusion

For the reasons given above and in plaintiffs' earlier papers, which are incorporated herein by reference, the Court should grant plaintiffs Evans and Baker an injunction pending appeal.

A proposed order is filed herewith.

                                             Respectfully submitted,

                                                   /s/

                                          Arthur B. Spitzer (D.C. Bar No. 235960)
                                          Frederick V. Mulhauser (D.C. Bar # 455377)
                                          American Civil Liberties Union
                                            of the National Capital Area
                                          1400 20th Street, N.W. #119
                                          Washington, DC 20036
                                          (202) 457-0800

                                          Counsel for plaintiffs

April 11, 2006