# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CALVERT POTTER, *et al.* ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 01-1189 (JR) |
| DISTRICT OF COLUMBIA, ) | |
| Defendant. ) | |
| ) | Consolidated with |
| STEVEN B. CHASIN, *et al*. ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 05-1792 (JR) |
| DISTRICT OF COLUMBIA, ) | |
| Defendant. ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS RASHUMAA AND CONERLY'S MOTION FOR RECONSIDERATION

### INTRODUCTION

Defendant respectfully opposes Plaintiffs Rashumaa and Conerly's Motion for Reconsideration, filed April 20, 2006. In their motion, Plaintiffs urge that this Court erred when it determined that the Fire and Emergency Medical Services Department ("FEMS") testing of Plaintiffs Rashumaa and Conerly was not properly conducted. The sole basis of their motion for reconsideration is the incorrect and unsupported proposition that the use of Flonase, the consumption of aromatic food, and the application of oils to

the beard[1] would yield false failures. See Conerly's Second Declaration; Rashumaa's Third Declaration.

In fact, Flonase, aromatic food (like garlic), and oil do not affect fit test readings in the normal course of testing because they do not generate particles counted by the PortaCount testing apparatus used by FEMS or other similar testing apparatus. See Defendant's Exhibit 1, Second Declaration of Dr. McKay.

## ARGUMENT

**The face mask fit tests were proper, and should not be redone.**

The Court's April 18, 2006, Memorandum Order stated that, "[t]he gist of this motion seems to be that plaintiffs failed the test because they were not given sufficient notice, but, since the test is of emergency equipment, surprise or random testing seems quite reasonable." Order at 2. Plaintiffs respond to this by erroneously suggesting that the fit tests that were given were flawed because a lack of notice caused Plaintiffs Rashumaa and Conerly not to abstain from using Flonase, consuming aromatic food, or applying oil before taking the face mask fit tests, and as a result failed their tests. Surprisingly, Plaintiffs make this assertion *without any expert opinion or scientific source to support their contention*. According to the only expert in this case, none of those three factors would cause a false failure.

As Dr. Roy McKay explains in his second declaration, the PortaCount testing machine counts very small particles in the air. During a fit test, the respirator to be fitted

---

[1] While these three factors are not listed in their Motion for Reconsideration, they are specified in the declarations that accompanied Plaintiffs Rashumaa and Conerly's subject April 11, 2006, Motion for an Order Directing the Fire Department to Give Them Proper Fit Tests. Plaintiff Conerly suggests in his second declaration that using Flonase may have caused his failure. See Second Declaration of Conerly. Plaintiff Rashumaa suggests in his third declaration that eating aromatic food and using oils on his beard may have caused his failure. Defendant does not here address smoking prior to the test because neither Plaintiffs claim to have done so.

2

is equipped with high efficiency filters designed to stop these particles from coming into the respirator. The PortaCount measures respirator fit by comparing the concentration of particles outside the respirator to the concentration of particles that have leaked into the respirator. The ratio of these two concentrations is called a fit factor. In general, the higher the fit factor the better the fit of the respirator. A large number of particles inside of the mask will result in a failing score. See Defendant's Exhibit 1 at ¶¶ 4-5.

A. **<u>The use of Flonase before a face mask fit test would not affect the results.</u>**

In his Second Declaration in support of his motion to be re-tested, Plaintiff Conerly wrongly and without scientific support suggests that his use of Flonase before his face mask fit test caused him to fail. See Second Declaration of Conerly at ¶ 4. Based on Dr. McKay's scientific opinion, however, the use of Flonase would have no bearing on a failing score.

There is simply no evidence to support the proposition that using Flonase would affect the measurement of fit factor. Flonase is an inhaled nasal medication designed to be delivered to the upper respiratory system (nasal area). As such, the particles are big (far bigger than those considered by the fit test) and deposit in the upper respiratory system where the body needs the medicine. See Defendant's Exhibit 1 at ¶ 7.

Further, when a person uses Flonase, he will use only one or two puffs. Relative to the much larger number of particles present in room air, those puffs produce only a small amount of particles. Furthermore, any small particles which could potentially be counted by the PortaCount would be readily flushed from the respiratory system during subsequent exhalations.

Thus, the use of Flonase before a face mask fit test would have no affect on the results of Plaintiff Conerly's test and would not yield a false failure. See *id*. at ¶¶ 8-9.

**B. The consumption of aromatic food prior to a face mask fit test would not affect the results of that test.**

Despite Plaintiff Rashumaa's suggestion that eating garlic and other aromatic food prior to his face mask fit test somehow led to a failing score, there is simply no evidence that "aromatic" or volatile food would affect the fit factor. See Rashumaa's Third Declaration at ¶¶ 4, 6, 11. Food is swallowed and goes into the stomach, not into the lungs. See Defendant's Exhibit 1 at ¶ 10. Any volatile component would be a gas. Gases are not counted by the PortaCount, therefore, the presence of a gas would not interfere with the measurement of fit factor. See *id*. at ¶¶ 10-11. Thus, it is irrelevant that Plaintiff Rashumaa consumed food before the test.[2]

**C. Oil particles would not affect the results of a face mask fit test; however, the use of oils on a beard at the point of seal may lead to an inconsistent fit factor.**

Plaintiff Rashumaa also wrongly contends that using oils would cause a failing score. See Third Declaration of Rashumaa at ¶¶ 3,6,11.

With regard to the use of oils on beards prior to a fit test, the usage may or may not affect the fit factor. See Defendant's Exhibit 1 at ¶ 13. Oils by their definition are relatively nonvolatile—they do not readily evaporate. In the absence of physically dispersing them into the air by mechanical or other means, they would not generate particles counted by the PortaCount. See *id*. at ¶¶ 13-14.

---

[2] Food could potentially affect respirator fit (fit factor). If pieces of food became trapped in the beard, they could potentially interfere with the face piece seal. This potential problem can be avoided by not having facial hair. See Defendant's Exhibit 1 at ¶ 12. Plaintiff Rashumaa does not allege that he had food in his beard, but even if he did, his beard, combined with the food, would be the cause of the failure.

Oils applied to the beard at the point of seal, however, may make the fit factor better or worse, and will most likely lead to an inconsistent fit. See *id*. at ¶ 13. Without a beard, this would not be an issue.

Plaintiff Rashumaa has stated that applying oils to his beard is part of his "daily routine." See Third Declaration of Rashumaa at ¶ 3. The fit test that Plaintiff Rashumaa took, therefore, was performed under realistic conditions and actually reflected his ability to pass the face mask fit test.

D. **No fit testing procedures require that those being tested abstain from eating or using oils before fit tests.**

Plaintiffs suggest that because FEMS required that the Plaintiffs abstain from using oils or lotions or eating 30 minutes prior to the face mask fit testing during the Court-ordered testing period, it must always have those conditions. This presupposes that the purpose of the requirements was for face mask fit testing generally. This, however, is not the case. As indicated by Acting Battalion Fire Chief William Flint, FEMS asked that the Plaintiffs refrain from using lotions and oils in their beards 24 hours prior to the scheduled test times to prevent the Plaintiffs from using such products to smooth their beards for better seals. See Defendant's Exhibit 2, Declaration of Chief Flint at ¶ 5. As noted above by Dr. McKay, oils on the beard may affect the face mask fit. See Exhibit 1 at ¶13.

In the court-ordered testing, FEMS also required that the Plaintiffs not eat 30 minutes prior to their test times out of an abundance of caution. See Exhibit 2 at ¶ 6. To Acting Battalion Fire Chief William Flint's knowledge, there are no fit testing procedural requirements that the prohibit the use of oils or other products or prohibit eating 30

minutes before taking a fit test using the PortaCount apparatus (although wearing a beard is prohibited). See *id.* at 7.

## CONCLUSION

For the aforementioned reasons, this Court should deny Plaintiffs Rashumaa and Connerly's Motion for Reconsideration of this Court's April 18, 2006, Memorandum Order. FEMS properly conducted the face mask fit tests, which Plaintiffs Rashumaa and Conerly failed, and returning them to administrative duty following their failures was consistent with this Court's March 20, 2006, Order and its directive at the March 14, 2006, hearing.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Robert C. Utiger**
ROBERT C. UTIGER [437130]
Senior Counsel
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6532

**/s/ Eden I. Miller**
EDEN I. MILLER [#483802]
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001

May 4, 2006, 2006                              (202) 724-6614