UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CALVERT L. POTTER, *et al.* | ) |
|     *Plaintiffs,* | ) Civil Action No. 01-1189 (JR) |
| v. | ) |
| THE DISTRICT OF COLUMBIA, | ) |
|     *Defendant* | ) |
| STEVEN B. CHASIN, *et al.* | ) |
|     *Plaintiffs,* | ) Civil Action No. 05-1792 (JR) |
| v. | ) |
| THE DISTRICT OF COLUMBIA, | ) |
|     *Defendant* | ) |

**DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant, the District of Columbia, by and through counsel the Office of the Attorney General of the District of Columbia and moves this Court for Summary Judgment pursuant to Fed.R.Civ.P 56(b). The reasons for this request are set forth below and in the memorandum in support which is incorporated herein by reference. There exist no genuine issues of material fact, which if resolved in favor of the plaintiffs, would preclude judgment for the District of Columbia.

WHEREFORE, the District of Columbia requests that this Court enter judgment for defendant and dismiss this action with prejudice.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia.


GEORGE C. VALENTINE
Deputy Attorney General for
 Civil Litigation


/s/ Robert C. Utiger
ROBERT C. UTIGER [437130]
Senior Counsel to the Deputy for
 Civil Litigation
P.O. Box 14600
Washington, D.C. 20001
(202) 724-6532

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CALVERT POTTER, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 01-1189 (JR) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |
| ) | Consolidated with |
| ) | |
| STEVEN B. CHASIN, *et al*. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 05-1792 (JR) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 56.1, Defendants submit this statement of material facts as to which there is no genuine issue:

1. On June 7, 2005, the District of Columbia Fire and Emergency Medical Services Department ("FEMS" or "Department") formally issued Special Order 20, Series 2005. ("Special Order 20") August 11, 2005, Mem. Op., at 4 (*Potter* Dkt. Entry 98).

2. In pertinent part, Special Order 20 requires that, "for the safety of the individual concerned, members who are required to wear tight fitting face pieces are not permitted to have [f]acial hair that comes between the sealing surface of the face

3

piece and the face or that interferes with the valve function … " Special Order 20 (*Potter* Dkt. Entry 73, Attachment 2).

3. Those who do not comply with Special Order 20 are subject to administrative duty, suspension, and ultimately, termination for noncompliance. *Id.*

4. In compliance with the Occupational Safety and Health Administration ("OSHA") standard 29 C.F.R. §1910.134 Special Order 20 precludes face mask fit testing on members with facial hair at the point of seal. Mem. Op., at 9-10 (*Potter* Dkt. Entry 98).

5. The plaintiffs in these consolidated cases refuse to shave their beards because of religious considerations, and allege that that Special Order 20 violates their rights under the Religious Freedom Restoration Act ("RFRA") (*Potter* Dkt. Entries 73-74); September 9, 2005, *Chasin* Complaint and M. for Preliminary Injunction (*Chasin* Dkt. Entries 1, 3).

6. This Court has held that Special Order 20 substantially burdens the free exercise of the plaintiffs' religion because the face-fit policy conflicts with the plaintiffs' religious requirement to grow beards. Mem. Op., at 8 (*Potter* Dkt. Entry 98).

7. This Court has held that the application of the burden to the plaintiffs is in furtherance of a compelling government interest. *Id.* at 9.

8. This Court held, after a full evidentiary hearing, that there are no reasonable less restrictive options to the requirement that firefighters and medics be able to safely wear negative pressure air purified respirators ("APRs"). *Id.* at 10.

9. This Court has held that the sole remaining issue in this case is whether the *Potter* plaintiffs "could actually operate safely with negative pressure APR's." *Id.*

10. The Court ordered that the Department conduct a series of tests to give plaintiffs a reasonable opportunity to demonstrate that they can consistently pass an appropriate face mask fit test. *Id.* at 14.

11. On September 9, 2005, the *Chasin* plaintiffs filed a complaint and motion for preliminary injunction, alleging the same claims as the *Potter* plaintiffs. (*Chasin* Dkt. Entries 1, 3).

12. The Court ordered the Department to conduct the same series of tests on the *Chasin* plaintiffs as the Court had ordered in *Potter,* and consolidated the two cases. November 10, 2005, Order. (*Chasin* Dkt. Entry 11).

13. From September 21, 2006, through January 11, 2006,[1] the Department conducted monthly face mask fit tests on the plaintiffs, pursuant to this Court's Orders. January 23, 2006, Defendants' Opp. to Ms. to Reinstate, at 2 and Exhibits (*Chasin* Dkt. Entry 16).

14. Firefighter Umrani never passed a face mask fit test. *Id.* at 5 and Exhibits.

15. Medics Conerly and Rashumaa, having achieved marginally passing scores on the first test and being issued a face-piece based on those tests, could not pass subsequent tests with their issued face pieces. Different masks were issued. *Id.*

16. On March 14, 2006, a motions hearing convened, and on March 20, 2006, the Court ordered that the Department reinstate Firefighters Potter, Ali, and Conerly, and Medics Chasin, Rashumaa, and Sterling to field operations, on the condition

---

[1] After three unsuccessful rounds of fit testing on Firefighter Umrani, FEMS agreed to obtain a large nosepiece, which was the only mask option not available at the time of his testing. On May 25, 2006, FEMS conducted a final round of fit tests on Firefighter Umrani utilizing a large nosepiece on various face masks. He could not achieve a passing score with any available mask.

that they pass face mask fit tests every 30 days.  (*Potter* Dkt. Entry 111; *Chasin* Dkt. Entry 23).

17. On March 23, 2006, Medic Rashumaa failed to achieve a passing score on his face mask fit test, and was removed from field duty.  June 27, 2006, Notice, at Exhibit 1 (*Potter* Dkt. Entry 123; *Chasin* Dkt. Entry 39).

18. On March 27, 2006, Firefighter Conerly failed to achieve a passing score on his face mask fit test, and was removed from field duty.  *Id.*

19. On May 25, 2006, Firefighter Potter failed to achieve a passing score on his face mask fit test, and was removed from field duty.  *Id.*

20. On May 25, 2006, Medic Sterling failed to achieve a passing score on his face mask fit test, and was removed from field duty.  *Id*.

21. Only two plaintiffs—Firefighter Ali and Medic Chasin—have, so far, passed all face mask fit tests administered in accordance with the Court's Orders.  *Id*.

        Respectfully submitted,

        ROBERT J. SPAGNOLETTI
        Attorney General of the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        **/s/ Robert C. Utiger**
        ROBERT C. UTIGER [437130]
        Senior Counsel
        441 Fourth Street, N.W., Sixth Floor South
        Washington, D.C. 20001
        (202) 724-6532

**/s/ Eden I. Miller**
EDEN I. MILLER [#483802]
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
Eden.Miller@dc.gov

July 7, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CALVERT L. POTTER, *et al.* ) | |
| ) | |
| *Plaintiffs,* ) | Civil Action No. 01-1189 (JR) |
| ) | |
| v. ) | |
| ) | |
| THE DISTRICT OF COLUMBIA, ) | |
| ) | |
| *Defendant* ) | |
| _____ ) | |
| ) | |
| STEVEN B. CHASIN, *et al.* ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | Civil Action No. 05-1792 (JR) |
| v. ) | |
| ) | |
| THE DISTRICT OF COLUMBIA, ) | |
| ) | |
| *Defendant* ) | |
| _____ ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT**

The issues presented in this case, while important to both the District and the plaintiffs, are not complex either legally or factually. It has been five years since the *Potter* action was filed, and more than a year since the District sought to enforce face-fit regulations that are in accord with universally accepted national safety standards. This Court has received declarations, conducted an all-day evidentiary hearing, considered numerous memoranda and heard multiple arguments on every issue in this case. The Court has held that plaintiffs' free exercise of religion is burdened by application of the face-fit policy adopted by the District in Special Order 20 to them. The Court has ruled that the Special Order 20 furthers a compelling governmental interest. The Court has

8

determined that there is no practical alternative to the use of the negative pressure masks issued by the District.  Finally, the Court has identified the sole remaining issue to be resolved before this case can be finally decided on the merits—can plaintiffs consistently pass face-fit tests while wearing beards?  Consideration of all of the evidence in this case leads to only one possible conclusion, plaintiffs cannot safely and consistently wear their issued face-pieces while wearing beards at the point of seal.  There is no genuine issue of material fact on this point and the District is entitled to summary judgment.

## Background

*Potter v. District of Columbia,* the older of these two consolidated actions,  was originally brought under the Religious Freedom Restoration Act ("RFRA") to enjoin the District from implementing an appearance based grooming policy that required fire-fighters to be clean shaven and limited their hair length.[2]  This Court entered a preliminary injunction on June 22, 2001 precluding the District from enforcing this grooming policy as to the plaintiffs.  Shortly thereafter the District effectively abandoned this grooming policy and the *Potter* case became dormant.  In early 2005 the Fire and Emergency Medical Service ("FEMS") expressed its intent to begin enforcement of a safety based policy that precluded the face-fit testing of fire-fighters and emergency medical personnel who have facial hair at the point where the face piece seals to the face.  This policy adopted the requirements of Occupational Safety and Health Administration ("OSHA") standard 29 C.F.R. §1910.134.  *Potter* plaintiffs brought a series of motions aimed at stopping FEMS from enforcing this policy as to them and both sides filed dispositive motions, all of which have been denied without prejudice.

---

[2] Of the original six *Potter* plaintiffs, only three are still employed by FEMS and currently involved in this litigation.

On August 1, 2005 the Court held an evidentiary hearing on the issues presented by *Potter* plaintiffs' motion to prevent the District from implementing Special Order 20 as to them. On August 11, 2005 the Court issued an order granting in part and denying in part plaintiffs request for preliminary injunctive relief. The Court allowed the District to remove the *Potter* plaintiffs from field duty but enjoined the government from discharging plaintiffs for refusing to shave. The effect was to relegate plaintiffs to administrative duties.[3] The Court also ordered that the District allow the plaintiffs the opportunity to take face-fit tests, over a series of months, to determine whether they could in fact consistently pass the required face-fit tests while wearing beards.

On September 9, 2005 the *Chasin* plaintiffs, five EMS workers and one fire-fighter, filed a complaint and motion for preliminary injunction challenging the application of the District's face-fit policy on grounds identical to those asserted in *Potter*. In opposition to this motion, the District submitted the declaration of Roy McKay, Phd. whose expert opinion is that the wearing of beards at the point of seal of a tight fitting face piece is unsafe. *Chasin* Dkt. 8 ¶ 20. Of note, this is the only expert testimony submitted in this six year old case and is unopposed.[4]

After oral argument, and without issuing a memorandum opinion, the Court again granted in part and denied in part plaintiffs' motion for preliminary injunction, providing relief identical to that awarded the *Potter* plaintiffs on August 11, 2005. The Court also consolidated the two actions.

---

[3] All other pending motions were denied without prejudice.
[4] Indeed, the only acknowledgment that Dr. McKay's declaration is in the record is the musing of counsel that some of the studies he cites are "old" and that mask science must now be better. Plaintiffs' counsel provided no basis for this last assertion.

10

In accordance with the Court's directive, the District conducted a series of face-fit tests at approximately 30 day intervals over the course of several months. After several months, two of the *Potter* plaintiffs and all of the *Chasin* plaintiffs moved for reinstatement.[5] The Court granted the motions of *Potter* plaintiffs Ali and Potter and *Chasin* plaintiffs Rashumma, Sterling, Chasin and Conerly and ordered reinstatement to field duty of these six plaintiffs. As a condition of reinstatement the Court, still uncertain of the plaintiffs' ability to consistently pass face-fit tests, ordered that each of the reinstated plaintiffs take and pass a face-fit test every 30 days. The Court's unease was well founded, plaintiffs Potter, Rashumma, Sterling and Conerly each failed a Court ordered post-reinstatement retest and have been removed from field duty. Only Plaintiffs Ali and Chasin remain on field duty while wearing beards.

## Argument

### Summary Judgment Standard

Summary judgment must be granted if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Summary judgment is appropriate where the pleadings and the record show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kingman Park Civic Ass. et al. v. Anthony A. Williams, et al* 348 F.3d 1033 (D.C. Cir. 2003)

### Religious Freedom Restoration Act

42 U.S.C. § 2000bb(b)(1)(a)-(b) provides that:

---

[5] In effect, plaintiffs moved to modify the Court's earlier preliminary injunctions of August 11, 2005 (*Potter*) and November 10, 2005 (*Chasin*).

11

> Government shall not substantially burden a person's
> exercise of religion even if the burden results from a rule of
> general applicability, except as provided in subsection (b)
> of this section.
> (b) Exception
> Government may substantially burden a person's exercise
> of religion only if it demonstrates that application of the
> burden to the person–
> (1) is in furtherance of a compelling governmental interest;
> and
> (2) is the least restrictive means of furthering that
> compelling governmental interest.

An individual asserting a claim or defense under the RFRA must show by a preponderance of the evidence that the government action in question would substantially burden the sincere exercise of his religion, whereupon the burden of proof shifts to the government to show that the action (1) would further a compelling governmental interest (2) that cannot be effectuated by less restrictive means. *See* 42 U.S.C. § 2000bb-1; *United States v. Israel*, 317 F.3d 768, 771 (7th Cir. 2003).

**Law of the Case**

The doctrine of law of the case embodies the general concept that a court should not reopen questions previously decided earlier in the case. *Crocker v. Piedmont* 49 F.3d 735 (D.C. 1995) In this case, which is now six years old, the Court has resolved all the material issues save one. As set forth below, this Court has determined that the District's Special Order 20 burdens the plaintiffs' free exercise of religion; that Special Order 20 furthers a compelling state interest; that there are no reasonable less restrictive alternatives to the negative pressure mask configuration in use by FEMS to meet its compelling state interest; and that therefore the sole remaining issue in this case is whether the plaintiffs can safely wear negative pressure face masks while having facial hair at the point of seal. Memo. Op. at 10-11 (*Potter* Dkt. Entry 98) As set forth below,

the Court's legal determinations as to the burden on plaintiffs' exercise of religion, the District's compelling interest in its respiratory protection plan for FEMS field personnel, and the unavailability of any reasonable less restrictive alternative to the use of negative pressure masks constitutes law of the case.

The law of the case doctrine provides that "the same issue presented a second time in the same case in the same court should lead to the same result." *LaShawn A. v. Barry,* 87 F.3d 1389, 1393 (D.C. Cir. 1996) The law of the case doctrine applies where an issue is actually litigated ands decided. *Nat' Souvenir Ctr., Inc. v. Historic Figures, Inc.,* 728 F.2d 503, 510 (D.C. Cir. 1984) In this case there is no question that the parties fully litigated the issues of the District's compelling interest in respiratory protection, the burden Special Order 20 placed on the plaintiffs' free exercise of religion, or that there was no reasonable alternative to the use of negative pressure masks to meet the District's compelling interest. August 11, 2005 Mem. Op. at 8-10.

On August 1, 2005 the Court held an all-day evidentiary hearing on issues raised by the *Potter* plaintiffs' motion seeking to prevent the District from enforcing Special Order 20 as applied to them. The Court set this hearing on June 13, 2005 and allowed the parties over a month and a half to prepare and allowed the parties to submit documentary evidence, present live witnesses and submit legal argument. Prior to the hearing, the parties engaged in written discovery, and noted and took several depositions.

On August 11, 2005, the Court issued an order accompanied by a memorandum opinion, that unambiguously resolved several key issues in this case, and identified the sole question to be answered before this case can be resolved, whether plaintiffs can safely wear their issued negative pressure masks.

Addressing the legal standard presented by a RFRA case, the Court first held that plaintiffs had sustained their initial burden of demonstrating that Special Order 20 substantially burdens the free exercise of their religion. Dkt. 98 at 8.   The Court determination that Special Order 20 substantially burdens the plaintiffs' exercise of their religion and that determination is law of the case and the issue no longer needs to be litigated. Id at 8.

Second, the Court held that:

> The Department asserts, and I find, that Special Order 20 furthers the interest of preserving the respiratory health of firefighters, so that they can help protect other fellow firefighters and the pubic they serve, and that this interest is compelling.

Id. at 9.   Again, the Court's determination on this issue after it was fully and completely litigated by the parties is law of the case. For purposes of this litigation it is established that Special Order 20 furthers a compelling state interest and that element no longer needs to be litigated.

Third, the Court held that plaintiffs had failed to "rebut[ed] the Department's compelling testimony" as to why "PAPR's or hooded PAPR's that plaintiffs say could be less restrictive alternatives to the negative pressure APR's" are not a viable less restrictive means of achieving the District's compelling interest. Id. at 10.  Plaintiffs' took discovery on this issue, cross-examined government witnesses and had ample opportunity to present witnesses and evidence of there own.  The determination that there is no reasonable less restrictive alternative to the use of FEMS issued negative pressure masks is law of the case reached after the issue was fully litigated by the parties. That question no longer needs to be litigated.

14

Finally, in its August 11, 2005 memorandum opinion the Court identified the only real issue left in this case, "the question of whether these three firefighters could actually operate safely with negative pressure APR's." Id. at 11. This sole remaining issue has been the almost exclusive focus of this litigation for a year, a full factual record has been developed, and the District is clearly entitled to summary judgment in this case.

**None of the Plaintiffs Can Safely Where Issued Negative Pressure Face-Pieces**

**Uncontroverted Expert Testimony**

The only expert testimony presented in this case is the declaration of Dr. Roy T. McKay submitted by the District.[6] Dr. McKay has been practicing with the field of respiratory protection for approximately 25 years. *Chasin* Dkt. 8. He is a member of American National Standard Institutes (ANSI) committee on respiratory protection, which sets national standards for respirator fit testing, and he chairs the subcommittee on respirator fit testing. He also has provided respirator consultation and training to a variety of governmental and non-governmental agencies, including the United States Navy, the United States Air Force, the Los Alamos National Laboratory, and the Centers for Disease Control. In sum, he is exceptionally well qualified to speak to the efficacy of respiratory protection.

Based on his decades of experience in the field and his review of the scientific literature, Dr. McKay opined that permitting facial hair at the point of a seal poses an unacceptable risk. In that regard, Dr. McKay stated that facial hair at the sealing surface of the respirator increases face-piece leakage, and that this leakage is variable and can change significantly from one donning to another. Because, as Dr. McKay noted,

---

[6] This declaration was submitted to the Court almost a year ago and has been the center piece of numerous arguments made by the government. Plaintiffs have never made an evidentiary objection to Dr. McKay's declaration.

15

respirator wearers may need to enter a confined space with highly toxic atmosphere in an emergency, wearing a respirator with facial hair could result in incapacitation if there were a leak, jeopardizing not only the health and safety of the wearer, but of other workers and a rescue team.  Thus, manufacturers' instructions specifically warn against use of respiratory protective equipment with facial hair, and, significantly, numerous guidelines and regulations prohibit allowing facial hair at the points where the mask face-piece seals to the face, including the Occupational Safety & Health Administration Respirator Protection Standards, as well as guidelines issued by the National Fire Protection Association, the Department of Energy, and the Nuclear Regulatory Commission.  Further, Dr. McKay stated that user seal checks (self fit tests) are unable to identify all leaks in a respirator, particularly where the leak site is diffusely spread out along the sealing surface, as it would be with leakage caused by facial hair.  Dr. McKay also noted that, in order to pass face fit tests, bearded respirator wearers may "force-fit" the respirator to their face in order to pass a fit test, but that the mask would be uncomfortable so fitted, and would be unlikely to be worn in that manner, particularly over an extended period of time.

      Most significantly, Dr. McKay opined that the leakage caused by facial hair at the point of seal is "variable in nature and can change significantly" from one donning to the next.  That is, someone with a beard can don a mask and get a proper seal, take it off and re-don the mask and get an inadequate seal. Id.at10. The clear and unavoidable conclusion to be drawn from this fact is that the passage of a face fit test while wearing a beard is no indication that the wearer can *consistently* achieve an adequate seal.

16

The plaintiffs have presented no evidence whatsoever to controvert defendant's clear testimony that facial hair causes face-piece leakage. They offered no expert testimony, and they pointed to no guidelines or regulations, indicating that facial hair can be safely allowed at the point where the mask face-piece seals. Indeed, such a notion would conflict with the judgment of OSHA, DOE, and NRC, as well as the National Fire Protection Association. Plaintiffs also offered no evidence that fit tests could effectively identify face-piece leaks cause by beards, or that fit tests could reliably be performed on individuals with beards or identify when beards could safely be worn with respiratory equipment.

### The Results of the Court Ordered Fit-Tests

As noted above, after the Court found that the only remaining issue in this case is whether the plaintiffs can consistently pass face-fit tests while wearing beards at the point of seal of their masks. The Court ordered a series of face fit test to resolve this question. While the District questioned the propriety of face-fit testing individuals with beards, it complied with the Court's directive by allowing plaintiffs to take a series of face-fit tests over a several months.

In accordance with the terms of the August 11, 2005 order in *Potter,* the District developed a program to face-fit plaintiffs Ali, Potter, and Umrani approximately every 30 days. After the issuance of the Court's November 10, 2005 order in *Chasin,* plaintiffs Rashumma, Sterling, Baker, Chasin, Conerly, and Evans were added to the testing program.[7]

---

[7] *Chasin* plaintiffs Baker and Evans opted not to grow their beards and therefore remained on field duty and did not take part in the testing program.

17

Firefighter Umrani, never passed a face-fit test. *Chasin* Dkt. Entry 16. Plaintiffs Conerly and Rashumma, having barely passed the first test failed the subsequent test, were issued different masks and passed. *Id.* Plaintiffs Ali, Potter, Chasin, Rashumma, Sterling, and Conerly passed each of the tests in the series although generally with scores far below the average.

On March 14, 2006 the Court ordered all of the plaintiffs except Umrani, Baker and Evans returned to field duty conditioned on their ability to pass subsequent face-fit tests. *Potter* Dkt. Entry 111; *Chasin* Dkt. Entry 23.

On March 23, 2006 Plaintiff Rashumaa again failed a face-fit test and was not returned to field duty. *Chasin* Dkt. Entry 39.

On March 27, 2006 Plaintiff Conerly again failed a face-fit test and was not returned to field duty. *Id.*

On May 25, 2006 both plaintiffs Potter and Sterling failed a face-fit test and were removed from field duty. *Id.*

Only two of the six plaintiffs ordered returned to duty have, so far, passed all the required face fit tests.

These results are absolutely consistent with the only expert testimony in this case. As Dr. McKay has opined, the face-fit of individuals with beards varies significantly from donning to donning. That a plaintiff can pass a fit-test, and fail a subsequent test a month, or for that matter a minute, latter, is fully consistent with the actual fit-test results in this case, which plaintiffs have characterized as "hard evidence."

**Conclusion**

This Court has previously resolved every material issue in this case save one. The sole remaining question in this case, identified by the Court almost a year ago, is can the plaintiffs safely wear their issued negative pressure masks while also wearing their beards. The un-rebutted expert testimony of Dr. McKay, supported by industry and governmental regulations, scientific literature, and the results of the face-fit tests ordered by this Court, lead to only one conclusion, plaintiffs cannot safely wear there issued face pieces while also wearing facial hair at the point of seal.   The District is entitled to judgment as a matter of law.

                                Respectfully submitted,

                                ROBERT J. SPAGNOLETTI
                                Attorney General of the District of Columbia.


                                GEORGE C. VALENTINE
                                Deputy Attorney General for
                                 Civil Litigation


                                /s/ Robert C. Utiger
                                ROBERT C. UTIGER [437130]
                                Senior Counsel to the Deputy for
                                Civil Litigation
                                P.O. Box 14600
                                Washington, D.C. 20001
                                (202) 724-6532