# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN B. CHASIN, *et al.* ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 05-1792 (JR) |
| DISTRICT OF COLUMBIA, ) | |
| Defendant. ) | Consolidated with |
| CALVERT POTTER, *et al.* ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 01-1189 (JR) |
| DISTRICT OF COLUMBIA, ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY OUTSIDE OF THE CONTEXT OF A RULE 56(f) DETERMINATION**

Plaintiffs, in opposition to the instant motion, assert that the District is "wrong on the law, wrong on the state of the record as to what the plaintiffs have agreed, and most notably wrong as to the sensible and fair way to resolve this cases." As set forth below, it is plaintiffs that are mistaken on these points. As a preliminary matter, plaintiffs are also wrong that the District is attempting to stop discovery "mid-stream." Indeed, discovery in these consolidated cases closed *by order of the Court* five months before plaintiffs served their last round of document discovery.

**Discovery Closed On January 8, 2006**

On November 10, 2005 the Court issued an order of consolidation that stated in pertinent part:

> ORDERED, that the requirements of Local Civil Rule 16.3 are hereby suspended; the parties my take such discovery as they may wish during the next ninety days; and it is further
>
> ORDERED, that this case and the case of *Potter v. District of Columbia,* No. 01-cv-1189 (JR) are hereby consolidated; evidence in the record of either case shall be deemed admitted in both cases, and the parties shall coordinate their litigation of the two cases to the extent practicable.

The only conceivable conclusion to be drawn from the Court's order is that discovery closed in these consolidated cases on January 8, 2005, almost five months before plaintiffs served there last round of written discovery (their third) and several more months before they sought deposition discovery.

In a very real sense the District's motion is superfluous, plaintiffs can not obtain further discovery without reopening discovery *nunc pro tunc,* relief they have not sought. Nevertheless, the District responds to the remainder of plaintiffs' arguments below.

**The District is Right on the Law**

Curiously, plaintiffs seem to argue that it is the District's position that a cut-off of discovery is "mandated" by prior case law.  Plaintiffs are correct that the cases cited by the defendant do not "mandate"  that this Court limit discovery to those issue that plaintiffs establish are genuinely in dispute. But the District never suggested otherwise, it is uniformly recognized that trial court's have broad discretion to control discovery. What Defendants do argue however, is that under the facts of this case common sense suggests that broad ranging discovery not be had without a showing of genuine need.

2

Plaintiffs have had years to take discovery. After a period of discovery and a full evidentiary hearing this Court, over a year ago, recognized that the sole remaining issue in this case was whether the plaintiffs could actually wear negative pressure face-pieces safely. Dkt. Entry 98 at 7, 11. After the Court's ruling, the efforts of the parties were directed wholly to determining the answer to this last remaining issue. Plaintiffs relied solely on the results of Court ordered face-fit tests to argue reinstatement, while the District has largely relied on the opinion of a nationally recognized expert. In the year since Dr. McKay wrote his expert opinion, plaintiffs have failed to provide any expert testimony in opposition.[1]

Under such circumstances plaintiffs should be required to demonstrate that additional discovery is necessary and that the discovery sought pertains to a genuine issue of material fact before engaging in a process that appears designed to thwart a final resolution of this matter in the foreseeable future.

### Plaintiffs Know Better Than Defendant What They Agreed To

Plaintiffs assert that they did not agree to be limited by Rule 56 and that their portion of parties joint submission of April 28, 2006 was meant to convey their opinion that unstructured open-ended discovery should proceed. While the defendant does not question the veracity of plaintiffs' position, it does point out the implication of plaintiffs' position.

On April 18, 2006 the Court ordered that:

> The parties are directed to meet and confer on what additional proceedings, if any, are needed before a final determination on the merits can be made, and, by April 28, 2006, **to present a proposed schedule for such proceedings,** including dates for briefing and any evidentiary hearing that may be required.

---

[1] The plaintiffs sought and obtained extensive document discovery on the basis of Dr. McKay's opinion shortly after the District first submitted his report to the Court.

3

*Potter* Dkt. 119 at 1. (emphasis added)

Plaintiffs now contend that their expression of a need for discovery in the joint submission was intended to convey that unrestricted discovery should go forward. This position, accepted as true, does not square with the requirements of the Court's April 18, 2006 order that a proposed schedule for further proceedings be submitted. In the April 28, 2006 submission, plaintiffs proposed no discovery schedule. They proposed no date by which written discovery must be served or a date when fact discovery would end. They proposed no schedule for expert discovery. The Court's April 28, 2006 order adopting the parties plan was silent on discovery except to express that the Court will entertain motions concerning expert reports or expert depositions.[2]

Discovery in this case closed by order of the Court eight months ago. Plaintiffs, despite the clear direction of the Court in its April 18, 2006 order, proposed no discovery schedule in the parties' joint submission of April 28, 2006. The Court's order of May 5, 2006 does not purport to reopen discovery nor does it in any sense contemplate full unlimited discovery. On this record, what plaintiffs "agreed to" is of no particular moment.

## Plaintiffs' Discovery Position is Neither Efficient Nor Fair

Plaintiffs assert that the only fair and efficient way to proceed in this case is to allow *plaintiffs* to proceed with discovery as if these consolidated cases had just been filed.[3] In their view, the August 1, 2005 evidentiary hearing and the findings the Court

---

[2] Plaintiffs have filed no such motions.
[3] The District's motion for summary judgment is based on the position that the only factual issue left in this case is whether or not the plaintiffs can safely wear their issued negative pressure masks and that there is no genuine issue on this point. Of course, if the plaintiffs successfully argue that there *are* material facts and discovery goes forward, the District will also be entitled to discovery. We will begin this litigation from the beginning.

made over a year ago on August 11, 2005 are mere things of the past with no application outside of the context of the preliminary injunction at issue. The findings of the Court on the District's compelling interest in its safety passed beard policy and the absence of a reasonable alternative to the use of negative pressure masks are of no weight in the plaintiffs' view.

The rules of this court hold otherwise, Fed.R.Civ.P. 65(a)(2) specifically contemplates that evidence submitted in a preliminary injunction proceeding forms part of the record at trial. And as the District set forth in its opening brief, plaintiffs must identify *genuine* issues of material in order to defeat the District's motion for summary judgment. While the Court may not be bound by findings at a preliminary hearing, given the pre-hearing discovery and the all-day evidentiary hearing this Court need not reopen discovery on these issues without some showing of genuine disputed fact by plaintiffs a showing that should be required before plaintiffs are allowed to go fishing.

Curiously, while plaintiffs assert that the process for seeking relevant and necessary discovery embodied in Rule 56 is inadequate, inefficient and unfair, they support their purported need for discovery with what looks suspiciously like a Rule 56(f) affidavit, albeit an ineffectual one. Further, plaintiffs spend several pages of their opposition arguing that there are disputed issues of fact that require discovery, an argument they will need to make in opposition to the District's pending motion for summary judgment if they are to defeat the District's motion. Defendants address these asserted "genuine issues of fact" briefly below.[4]

---

[4] The District reserves the right to further and more fully address this issue when and if plaintiffs make these arguments in opposition to the District's dispositive motion.

Plaintiffs first assert that they need discovery to ascertain whether or not the District's assertions that the commercial vendors the District sought to contract for its department wide fit-testing would not test individuals with beards is true. Of course, underlying this suggesting is a serious allegation that government officials mislead this Court.

Rather than, in the first instance, taking government officials away from their public duties and wasting the time of numerous attorneys, defendant suggests a far more direct way of establishing whether a genuine issue of fact exists on this point. One of plaintiffs' counsels' paralegals could simply contact the testing companies and ascertain whether or not they were willing to test bearded fire-fighters. This process should take no more than a few hours. If they answer is no, then there is no need for discovery based on plaintiffs misreading of documents produced by the District.

It is wholly proper for this Court to require plaintiffs to do some minimal factual investigation before allowing further discovery at this stage of this litigation.[5]

Next plaintiffs find it significant that Ms. Scott, who has performed the District's in-house fit-testing, is not "certified" to perform fit-tests. Once again they assert a need for discovery to delve into this. Or, they could contact the manufacture of the testing equipment and determine whether or not a certification program exists.[6]

Better yet, if plaintiffs' real point is that they believe their fit-testing was improperly performed, they can obtain more conclusive evidence by actually attacking the testing process into question. Plaintiffs' counsel have been invited to observe all of the plaintiffs' face-fit tests. If they have questions on how the tests were performed they

---

[5] After plaintiffs determine that in fact no testing organization will test bearded fire-fighters civility would require an apology to those officials whose honesty plaintiffs' counsel have called into question.
[6] The undersigned has been informed that a certification program does not exist.

6

can articulate them. Better yet, they can supply an affidavit, by someone competent to offer an opinion, that the testing procedures where flawed. Discovery is not a substitute for plaintiffs developing their case by independent investigation.

As to the availability of PAPR's and APR's they are simply not a suitable substitute for a negative pressure mask for a multitude of reasons. For example, in case of failure a PAPR does not default to a safe negative pressure mask.

At any rate, before plaintiffs pursue this red herring through discovery, they should produce the opinion of an expert in respiratory protection that PAPR's or APR's are suitable substitutes for a negative pressure mask. Rule 56 provides the perfect opportunity for plaintiffs to do so.

Which leads to plaintiffs' assertion that they need to take the deposition of Dr. McKay. In order to establish a genuine issue of fact regarding the opinions stated by Dr. McKay, plaintiffs must present competent expert testimony to rebut those opinions. Plaintiffs have had a year find an expert in respiratory protection willing to contradict Dr. McKay's opinions. The absence of a plaintiffs' expert is deafening. If and when plaintiffs provide such an opinion and establish a genuine issue of material fact, the District will be more than happy to provide Dr. McKay for deposition. If necessary, this Court can require an evidentiary hearing to determine issues of credibility. In the absence of a plaintiffs' expert, there is simply no genuine issue of fact requiring discovery.

## CONCLUSION

Plaintiffs have presented no reason way discovery in this case should be re-opened eight months after it closed by order of this Court. Plaintiffs have failed to

demonstrate that discovery, unlimited in scope and time, is the fairest and most efficient way to move this case forward. Finally, plaintiffs have failed to articulate any valid reason why the procedures set forth in Rule 56 are not adequate to address every *legitimate* need for discovery they might have. For all these reasons discovery in this case should not be had outside the context of a finding of need under Rule 56(f). Defendants request oral argument on this issue.

        Respectfully submitted,

        ROBERT J. SPAGNOLETTI
        Attorney General of the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        **/s/ Robert C. Utiger**
        ROBERT C. UTIGER [437130]
        Senior Counsel
        441 Fourth Street, N.W., Sixth Floor South
        Washington, D.C. 20001