# Doan Declaration
## Part 1 of 7

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CALVERT L. POTTER, *et al.,*

       Plaintiffs,

   v.

DISTRICT OF COLUMBIA,

      Defendant.

No. 01-cv-1189 (JR)

STEVEN B. CHASIN, *et al.,*

       Plaintiffs,

   v.

DISTRICT OF COLUMBIA,

      Defendant.

No. 05-cv-1792 (JR)

**DECLARATION OF JOSHUA A. DOAN IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR A CONTINUANCE PURSUANT TO RULE 56(f)TO TAKE ADDITIONAL DISCOVERY**

Joshua A. Doan declares as follows:

1.  I am an associate with the law firm of Covington & Burling LLP, and counsel for the plaintiffs in Potter *et al.* v. District of Columbia, No. 01-cv-1189 (JR).   I make this declaration based on personal knowledge and facts provided to me by other counsel of record in this case and in Chasin *et al.* v. District of Columbia, No. 05-cv-1792 (JR).

2.  I make this declaration in support of Plaintiffs' Motion for Summary Judgment, and Opposition to Defendant's Motion for Summary Judgment or in the Alternative for a Continuance Pursuant to Rule 56(f) to Take Additional Discovery.

A.    **Plaintiffs' Attempts at Discovery Since April 26, 2006 and the Department's Responses**

3.    Plaintiffs have diligently attempted to take discovery since the parties' conferred on April 26 and submitted a Meet and Confer Report to the Court on April 28 (as well as conducting active discovery prior to that date).

4.    On April 27, 2006, Plaintiffs served a notice to take the deposition of Roy T. McKay, a consultant upon whose declaration the Department had relied in prior filings (and on which the Department continues to rely in its summary judgment motion). The Department has refused to produce McKay for a deposition, and has instead taken the position that the McKay declaration "is already in evidence and can be considered by the Court in determining the merits" of the *Potter* and *Chasin* cases. Attached as Exhibit A is an April 28 email from the Department's counsel reflecting that position.

5.    On May 5, 2006, Plaintiffs served their Third Request for the Production of Documents ("Plaintiffs' Third Request"). The Department (belatedly) began responding to Plaintiffs' Third Request without contending that discovery in this case should be closed and the matter resolved on the basis of the existing record. The Department produced over 500 pages of documents on July 10 and made a larger subsequent production on August 2, as well as other smaller supplemental productions on July 20, August 3 and August 7. Overall, the Department has produced somewhat over 2,000 pages of documents in response to the Plaintiffs' Third Request, while withholding several hundred pages of documents on the asserted bases of privilege and, in a few cases, personal privacy. Pending the Court's resolution of the Department's summary judgment motion, the Department has refused to clarify its privilege claims or produce a proper privilege log. Attached as Exhibit B is an email from the Department's counsel reflecting the Department's position.

6.   On July 21, plaintiffs served notices for the depositions of two fire department employees, Mitchell Molenof and John Donnelly, and a notice for Defendant's deposition under Federal Rule of Civil Procedure 30(b)(6), seeking testimony on topics including the results of fit testing conducted on Plaintiffs and all other Department members in 2005 and 2006 and the purchase and use of PAPRs by the Department and other COG jurisdictions.  On August 1, the Department's counsel informed Plaintiffs' counsel that the Department would not make available any deposition witnesses and would move the Court for a protective order. Attached as Exhibit C is a true and correct copy of an email from the Department's counsel stating the Department's position.  On August 9, the Department moved the Court to stay discovery "outside of the context of a rule 56(f) determination."  Plaintiffs filed an opposition on August 18, and the Department filed its reply on September 1.  The Court has not yet ruled on the Department's motion.

**B.    Plaintiffs' Need for the Discovery Sought Since April 26 to Oppose the Department's Summary Judgment Motion**

7.   The Department's summary judgment motion relies entirely on (a) the fact that all but two Plaintiffs (as of July 7) had failed at least one fit test administered by the Department and (b) the unexamined opinions contained in the declaration of its consultant, Roy T. McKay, including (c) the opinion that leakage caused by facial hair is variable in nature and can change significantly from one donning to the next.  Therefore, unless their Motion for Summary Judgment is granted on the present record, Plaintiffs request a continuance to take discovery on the following topics relevant to their opposition to Defendant's summary judgment motion (as well as to Plaintiffs' Motion for Summary Judgment):

8.   ***The training and certification of the Department employee who conducted Plaintiffs' fit tests***:  Among the documents produced by the Department on August 2 was a May

3

23, 2006, email from Battalion Fire Chief Alfred B. Jeffery III to Deputy Fire Chief William

Fitzgerald. Chief Jeffery stated that he "was surprised to discover" that the Department

employee conducting Plaintiffs' fit tests possesses no "certification for fit testing." Chief Jeffrey

also stated that it appeared that someone had "turned [that employee] over on the use of fit test

equipment and she in turn turned over the other air unit members." A copy of that email, which

Plaintiffs have labeled DEF 4411, is attached as Exhibit D. Permitting Plaintiffs to take

discovery into that employee's training and certification to administer fit tests might reveal

further evidence that the results of tests administered by her are not sufficiently reliable to serve

as the basis for terminating any Plaintiff who fails. In addition, Plaintiffs need to conduct

discovery to determine why this Department employee was selected to test the Plaintiffs, and not

the outside contractor used by the Department for all tests of Department members other than

Plaintiffs.

    9. ***Results of 2006 Department-wide fit tests***:  Among the documents produced by the

Department in response to Plaintiffs' Third Set were the results of the 2005 Department-wide fit

tests. Unlike a version of the results previously produced by the Department to the paramedics'

union in response to a FOIA request, the version produced in this litigation contains an

identification number for each fit test taker. Attached as Exhibit E. is a true and correct copy of

a print-out of spreadsheet containing the results of those tests. The spreadsheet is sorted by ID

number, and for the sake of convenience, I have hidden (using the Excel procedure for thus

limiting a spreadsheet to the display of relevant material) all columns except those containing (a)

the test date, (b) the operator, (c) the ID number, (d) the company, (e) the location, (f) the mask

model, (g) the mask style, (h) the mask size, (i) the overall fit factor, and (j) whether the test

taker received an overall passing score. The spreadsheet reveals that on at least 28 occasions in

2005 a Department member received a failing score and a passing score on the same day with the same model and size facepiece. Those members have the following ID numbers: (1) 00186; (2) 00188; (3) 0338; (4) 000340; (5) 0368; (6) 0399; (7) 0456; (8) 0470; (9) 000650; (10) 0669; (11) 0859; (12) 0910; (13) 00942; (14) 0965; (15) 1038; (16) 1079; (17) 001286; (18) 001526; (19) 1587; (20) 1834; (21) 1853; (22) 2032; (23) 2533; (24) 2858; (25) 2873; (26) 2919; (27) 2954; and (28) 3173. These results suggest that the Department tolerates variable fit test results obtained by non-bearded members while contending that the risk of variable results for bearded members is so severe that it justifies terminating any member who refuses to shave because of his sincerely held religious beliefs. Permitting discovery into the results of the 2006 Department-wide fit tests might reveal (i) that the Department has continued its practice of overlooking variable fit test results obtained by non-bearded members while contending in this litigation that it should be permitted to terminate any Plaintiff who fails a single fit test, or (ii) that some Department members who passed in 2005 failed a test in 2006, creating an inference that if some non-bearded members were tested as frequently as Plaintiffs have been, they too would occasionally fail a test during the course of the year. The Department has indicated that it will not produce the results of the 2006 Department-wide fit tests unless it is required to do so by the Court's ruling on the Department's summary judgment motion. Attached as Exhibit F is an email from the Department's counsel stating the Department's position on this issue.

10. *Opinions of the Department's consultant, Roy T. McKay*: The Department introduced its consultant's declaration on September 28, 2005 in connection with its opposition to the *Chasin* plaintiffs' preliminary injunction motion. Although the Department has continued to rely heavily on McKay's declaration in both the *Potter* and *Chasin* cases since that time, Plaintiffs have never been given the opportunity to cross-examine him, and as a result Plaintiffs

have been unable to ascertain the basis for, and limits of, any of the opinions contained in his declaration. Permitting Plaintiffs to depose McKay might reveal facts that would undermine any weight that the Court might give to his opinions in reaching a judgment on the merits of this case.

11. As discussed in Plaintiffs' memorandum in support of their summary judgment motion and in opposition to the Department's summary judgment motion, if the Court does not grant Plaintiffs' summary judgment motion based on the existing record Plaintiffs request a continuance to take discovery into the suitability of PAPRs, especially the Scott C420 PAPR, as an alternative to the Department's facial hair ban.

## C.  The Department's Failure to Follow OSHA's Five-Minute Donning Requirement When Conducting Plaintiffs' Fit Tests.

12. I was present on several occasions between the Fall of 2005 and the Spring of 2006 when a Department employee conducted monthly fit tests on the *Potter* and *Chasin* plaintiffs. It is my recollection that the Department employee administering those tests did not ask any Plaintiff to don his facepiece for five minutes before beginning the test.

13. On May 24, 2006, Plaintiffs' counsel, Arthur Spitzer emailed the Department's counsel to inform them that OSHA's fit testing protocol requires that the test subject don his or her facepiece for five minutes prior to starting the test. On May 25, the Department's counsel replied by email that he would forward Mr. Spitzer's message to the Department. Attached as Exhibit G is true and correct copy of these emails.

14. It is my understanding that at fit tests conducted after May 25, 2006, the Department has informed Plaintiffs that they could, if they wished, don their facepieces for five minutes before starting the test.

D.   **The Department's Zero Tolerance Approach to Conducting Plaintiffs' Fit Tests Since the March 20 Order.**

15. It is my understanding that since the Court entered its March 20 Order reinstating certain Plaintiffs to active duty status, any Plaintiff who has failed a fit test has not been permitted to adjust his facepiece or don a different facepiece and retake the test. This has been confirmed by the Department's refusal today to allow a Plaintiff who failed a single fit test after a major weight loss following surgery to be retested with a different mask.

E.   **Authentication of Other Documents Supporting Plaintiffs' Summary Judgment Motion, and Opposition to Defendant's Summary Judgment Motion**

16. Exhibit H is a true and correct copy of documents produced by the Defendant, to which the stamped number DEF000014-18 have been added. The First page indicates that a copy of an RFP is attached. The following page states that the District of Columbia Fire and EMS Department is interested in securing a contract to fit test over 1600 employees and that all work should be performed in accordance with 29 CFR 1910.34, which comprises regulations issued by OSHA. Subsequent pages contain a Statement of Work making the same point in several places..

17.  Exhibit I is a true and correct copy of documents produced by the Defendant, to which the stamped production numbers DEF002704-05 have been added..

18.  Exhibit J is a true and correct copy of documents produced by the Defendant, to which the stamped production numbers DEF00002552-2556 have been added.

19.  Exhibit K is a true and correct copy of a document describing the C420 PAPR downloaded from http://www.scotthealthandsafety.com.

20.  Exhibit L is a true and correct copy of a document describing the C420 PAPR's Lithium Sulfur Dioxide Battery downloaded from http://www.scotthealthandsafety.com.

21. Exhibit M is a true and correct copy of a document titled "C420 PAPR Powered Air Purifying Respirator Questions and Answers" downloaded from http://www.scotthealthandsafety.com.

22. Exhibit N is a true and correct copy of a document titled "C420 Powered Air Purifying Respirator Bid Specifications" downloaded from http://www.scotthealthandsafety.com.

23. Exhibit O is a true and correct copy of a document titled "C420 PAPR Specification Card" downloaded from http://www.scotthealthandsafety.com.

24. Exhibit P is a true and correct copy of a document titled "C420 PAPR Powered Air-Purifying Protection for First Responders" downloaded from http://www.scotthealthandsafety.com.

25. Exhibit Q is a true and correct copy of a document titled "D-cell Lithium/Sulfur Dioxide Battery" downloaded from http://www.hdssystems.com.

26. Exhibit R is a true and correct copy of documents produced by the Defendant, to which the stamped production numbers DEF003937-3938 have been added.

27. Exhibit S is a true and correct copy of documents produced by the Defendant, to which the stamped production numbers DEF003952-3953 have been added.

28. Exhibit T is a true and correct copy of documents produced by the Defendant, to which the stamped production numbers DEF003988-3989 have been added.

29. Exhibit U is a true and correct copy of documents produced by the Defendant, to which the stamped production numbers DEF003994 have been added.

30. Exhibit V is a true and correct copy of documents produced by the Defendant, to which the stamped production numbers DEF002747-2754 have been added..

31.  Exhibit W is a true and correct copy of excerpts from the July 25, 2005, Deposition of the District of Columbia Fire Department.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 13, 2006.

_____
Joshua A. Doan

# EXHIBIT
# A

**Doan, Joshua**

___

**From:**  Utiger, Robert (OAG) [robert.utiger@dc.gov]

**Sent:**  Friday, April 28, 2006 9:55 AM

**To:**  'ArtSpitzer@aol.com'; Iverson, William; Doan, Joshua

**Subject:**  Deposition of Dr. McKay

Art, William and Joshua

I just received your notice of deposition for Dr. McKay.  As I said at the meet in confer on Wednesday, I do not believe that it is appropriate to take the deposition of Dr. McKay at this juncture.  Your reliance on Rule 26 as authority for your notice of deposition is misplaced.  R. 26(b)(4) authorizes only the deposition of an expert who has been designated to testify at trial.  No such designation has been made nor has the Court required the parties to designate experts.    The District's decision as to whether or not to call Dr. McKay at any evidentiary hearing depends in large part on any opposing expert testimony plaintiffs' intend to rely on. Dr. McKay's declaration is already in evidence and can be considered by the Court in determining the merits.

I note that, to the extent plaintiffs' believe that the submission of Dr. McKay's declaration constituted a report of an expert expected to testify at trial under Rule 26 (a)(2)(A), plaintiffs' failure to produce the report of a rebuttal expert by October 28, 2005 effectively waived their right to call such an expert.  *See* Rule 26(a)(2)(C).

I am willing to discuss a reasonable solution, and I define reasonable only as an agreement that requires plaintiffs to produce an expert report at least two weeks in advance of any deposition of Dr. McKay.  Should plaintiffs seek to compel the appearance of Dr. McKay pursuant to plaintiffs' defective notice, I will seek to bar any expert testimony by plaintiffs.   Hopefully we can resolve this issue amicably.

Regards,

Bob

# EXHIBIT
# B

---

**Doan, Joshua**

---

**From:** Utiger, Robert (OAG) [robert.utiger@dc.gov]

**Sent:** Tuesday, August 15, 2006 4:22 PM

**To:** Iverson, William; Utiger, Robert (OAG)

**Cc:** ArtSpitzer@aol.com; Doan, Joshua; Miller, Eden (OAG)

**Subject:** RE: Department's privilege claims

Bill,

Didn't mean to be obtuse.  We will not produce a further privilege log unless the Court finds, based on plaintiffs Rule 56(f) showing, that such further information is related to a genuine issue of material fact or is necessary to allow you to make a showing that a genuine issue of material fact exists.

Or the Court otherwise orders us to do so.

Regards,

Bob

---

**From:** Iverson, William [mailto:wiverson@cov.com]
**Sent:** Tuesday, August 15, 2006 4:12 PM
**To:** Utiger, Robert (OAG)
**Cc:** ArtSpitzer@aol.com; Doan, Joshua
**Subject:** RE: Department's privilege claims

Bob,
    Are you saying that you will not produce a privilege log at this time going beyond the index you have already provided.  If not, exactly are you saying?  We made a document request.  You produced some documents, but you withheld a number of documents on the ground of privilege.  We believe that we are entitled to a privilege log sufficient for us to address the claims of privilege (and have tried to propose a way to do that we would accept, that would be significantly less burdensome than a standard, required privilege log).
    It seems to me that there are only 3 possibilities:
    (1) You will not produce any privilege log going beyond the index you have already supplied, at least until your motion for a stay is resolved.
    (2) You will produce a privilege log, following Instruction 2 of our Document Request (to which I do not believe you objected), or the approach we have proposed.
    (3) You have some other proposal to address the privilege issue at this time.

I think you are saying (1), but would like to have that clearly stated -- or to know with greater clarity what you are saying.

Thanks,
Bill

---

**From:** Utiger, Robert (OAG) [mailto:robert.utiger@dc.gov]
**Sent:** Tuesday, August 15, 2006 3:34 PM
**To:** Iverson, William; Utiger, Robert (OAG)
**Cc:** ArtSpitzer@aol.com; Doan, Joshua; Miller, Eden (OAG)
**Subject:** RE: Department's privilege claims

Bill,

As you know, we see this case in very different ways. We believe that the sole remaining question necessary to entitle the District to judgment in this case is whether plaintiffs can safely wear the negative pressure configuration of the Scott face-piece. We further believe that the facts necessary to resolve this issue in the District's favor are in the record and that there is no legally sufficient dispute on these facts. None of the privileged documents touch on these facts.

I continue to think that Rule 56 is the best way to address the issue of what remains. If you believe that there is a factual dispute that will prevent judgment in the District's favor and that the failure to provide an adequate privilege log has prevented you from demonstrating that a dispute exists you can oppose the summary judgment motion on that ground. If the Court agrees you get the discovery you convince the Court you need. If not, we get to the merits. At the very least this will sharpen all of our focuses.

Regards,

Bob

---

**From:** Iverson, William [mailto:wiverson@cov.com]
**Sent:** Tuesday, August 15, 2006 3:12 PM
**To:** Utiger, Robert (OAG)
**Cc:** ArtSpitzer@aol.com; Doan, Joshua
**Subject:** RE: Department's privilege claims

Bob,

    If the Department has withheld important documents under a unjustified claim of privilege, those documents could obviously be important, both for purposes of your stay motion and for our opposition to your pending summary judgment motion, as well as for future discovery, whether under the approach toward case planning we propose or under your proposed approach.

    Unfortunately, your present index does not provide us with any realistic basis to assess your privilege claims.

    We have tried to propose an approach that would minimize unnecessary work, while giving us the information we need as to documents where the claim of privilege may be contestable. By our count, you have claimed privilege on 148 documents. Preparing a normal privilege documents for this number of documents is not a substantial project, and since I would expect that a sizable number of documents would be in our "A" category (requiring no further log information), I would hope that the project is a very small one.

    I am happy to discuss this with you, in terms of how we have framed our proposal and any counter suggestions you may have. But I think we need to address this issue now, not after your motion is resolved, when -- whichever way it is decided -- we may all be busy with other matters.

Bill

---

**From:** Utiger, Robert (OAG) [mailto:robert.utiger@dc.gov]
**Sent:** Tuesday, August 15, 2006 1:24 PM
**To:** Doan, Joshua; Miller, Eden (OAG)
**Cc:** Utiger, Robert (OAG); Iverson, William; ArtSpitzer@aol.com
**Subject:** RE: Department's privilege claims

Perhaps it would be more efficient to table this exercise until after resolution of the District's pending motion to stay discovery.

---

**From:** Doan, Joshua [mailto:jdoan@cov.com]
**Sent:** Tuesday, August 15, 2006 1:03 PM
**To:** Miller, Eden (OAG)
**Cc:** Utiger, Robert (OAG); Iverson, William; ArtSpitzer@aol.com
**Subject:** Department's privilege claims

Dear Eden:

In the course of reviewing the indexes that you provided with the Department's responses to Plaintiffs' third set of document requests we have determined that we lack sufficient information to assess many of the Department's privilege claims. We remind you that Instruction No. 2 for those requests asks that for each document claimed as privileged the Department "state the authors and recipients (and their titles)," and to "describe the subject matter of the Document in sufficient detail to allow plaintiffs to bring the issue of privilege before the Court," among other things. Telling us in a blanket statement at the end of the index that each document for which the attorney-client privilege has been claimed "involves one or more of [seven listed] attorneys and/or legal office personnel" sheds little light on whether the document constitutes a confidential communication between attorney and client for the purpose of giving or receiving legal advice.

We believe that rather than asking you to furnish a traditional privilege log providing the information requested in Instruction No. 2, it would be more efficient to obtain additional information about the authors and recipients of each document claimed as privileged. We ask that you determine, for each document for which the attorney client privilege is claimed (all of which are emails apparently):

A.    Whether the total number of authors and recipients (including anyone who was copied on the email) is four or fewer, and:

1.    each author or recipient is either an attorney or an officer of the Department, and
2.    at least one attorney is either an author or an "addressee" recipient of the email (as opposed to a "copy" recipient).

B.    If each condition listed in "A" is met, you need not provide any further information about the document (with the exception of Document 314, as to which you have recently asserted a claim of privilege, and which Bill Iverson has corresponded with you concerning that assertion).

C.    If each condition listed in "A" is not met, please list each author or recipient (indicating whether he or she was an author or a recipient), along with his or her title, for each document, and "describe the subject matter of the Document in sufficient detail to allow plaintiffs to bring the issue of privilege before the Court."

Please let us know if this approach is acceptable to you, or if you have any questions. Of course, if you would prefer to perform a normal, complete privilege log supplying the necessary information requested by Instruction 2 to our Third Request for the Production of Documents, that would be acceptable.

Because of your scheduled motion to stay discovery, and our desire to complete fact discovery promptly, I need to ask you to supply us with an appropriate privilege log promptly. We believe that 5 business days is a reasonable period under the circumstances. Please let us know if that is acceptable.

Josh


Joshua Doan
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004-2401
Tel: (202) 662-5445
Fax: (202) 778-5445

*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.*

Case 1:05-cv-01792-JR     Document 47-3     Filed 10/16/2006     Page 17 of 23

# EXHIBIT C

**Doan, Joshua**

---

**From:**    Utiger, Robert (OAG) [robert.utiger@dc.gov]

**Sent:**    Tuesday, August 01, 2006 4:42 PM

**To:**    Doan, Joshua; Miller, Eden (OAG)

**Cc:**    Utiger, Robert (OAG); Iverson, William; ArtSpitzer@aol.com

**Subject:** RE: Potter/Chasin Protective Order

Josh,

I've spoken to Art and we will be moving for a protective order and not providing Molenof or Donnelly for dep.

---

**From:** Doan, Joshua [mailto:jdoan@cov.com]
**Sent:** Tuesday, August 01, 2006 4:38 PM
**To:** Miller, Eden (OAG)
**Cc:** Utiger, Robert (OAG); Iverson, William; ArtSpitzer@aol.com
**Subject:** Potter/Chasin Protective Order

Eden:

I'm writing to follow up on the voicemail I left you this afternoon.  The Court has now granted the parties' joint motion for a protective order.  We would like to obtain as soon as possible any documents that the Department has withheld in the absence of one.  These documents include, without limitation, the documents from your July 10 index numbered 159-164, 194-213, 548-553, 554-557, 558-562, 563-566, and 567-576.  If these documents cannot be produced by fax or .pdf, please let me know and I will send someone over to pick them up.

I also left you an email earlier this afternoon about the Molenof and Donnelly depositions, which have been noticed for next Monday and Tuesday.  We need to confirm that you will make the deponents available as noticed so that we can make the appropriate arrangements.  Please let me know.  Thanks.

Josh


Joshua Doan
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004-2401
Tel: (202) 662-5445
Fax: (202) 778-5445

*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.*

---

**From:** DCD_ECFNotice@dcd.uscourts.gov [mailto:DCD_ECFNotice@dcd.uscourts.gov]
**Sent:** Tuesday, August 01, 2006 3:19 PM
**To:** DCD_ECFNotice@dcd.uscourts.gov
**Subject:** Activity in Case 1:05-cv-01792-JR CHASIN et al v. DISTRICT OF COLUMBIA "Order on Motion for Protective Order"

***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

## U.S. District Court

## District of Columbia

Notice of Electronic Filing

The following transaction was received from zalr, entered on 8/1/2006 at 3:18 PM and filed on 8/1/2006

| | |
|---|---|
| **Case Name:** | POTTER, et al v. DC |
| **Case Number:** | 1:01-cv-1189 |
| **Filer:** | |
| **Document Number:** | |

| | |
|---|---|
| **Case Name:** | CHASIN et al v. DISTRICT OF COLUMBIA |
| **Case Number:** | 1:05-cv-1792 |
| **Filer:** | |
| **Document Number:** | |

**Docket Text:**
MINUTE ORDER granting [125] Motion for Protective Order and adopting the protective order and stipuation regarding the disclosure of confidential information as proposed by the parties. . Signed by Judge James Robertson on 8/1/2006. Associated Cases: 1:01-cv-01189-JR,1:05-cv-01792-JR(alr)

The following document(s) are associated with this transaction:

**1:01-cv-1189 Notice will be electronically mailed to:**

Joshua A Doan    jdoan@cov.com,

Joseph Edward Hartman    jhartman@fulbright.com,

Theodore C. Hirt    theodore.hirt@usdoj.gov,

William D. Iverson    wiverson@cov.com

Eden Ilene Miller    eden.miller@dc.gov, edward.taptich@dc.gov

Jonathan F. Potter    kimberly.matthews@dc.gov

Arthur B. Spitzer    artspitzer@aol.com, courtfilings@aclu-nca.org

Robert C. Utiger    robert.utiger@dc.gov

Jonathan Eli Zimmerman    jonathan.zimmerman@usdoj.gov

10/10/2006

**1:01-cv-1189 Notice will be delivered by other means to:**

**1:05-cv-1792 Notice will be electronically mailed to:**

Eden Ilene Miller      eden.miller@dc.gov, edward.taptich@dc.gov

Arthur B. Spitzer      artspitzer@aol.com, courtfilings@aclu-nca.org

Robert C. Utiger      robert.utiger@dc.gov

**1:05-cv-1792 Notice will be delivered by other means to:**

10/10/2006

# EXHIBIT
# D

—

## Unknown

**From:** Jeffery, Alfred III. (FEMS)
**Sent:** Tuesday, May 23, 2006 7:48 AM
**To:** Fitzgerald, William (FEMS)
**Subject:** Fit Testing and other stuff

I had a discussion with Shelia this morning in reference to her certification for fit testing, I was surprised to discover that she posses none. It seems that Bob Simms turned her over on the use of the fit test equipment and she in turn turned over the other air unit members. I will have Mitch call MES, Maryland Fire and the other vendor giving us pricing on doing our fit testing to see what, if any, certification is needed or that they use to certify their employees. I will also have Mitch contact the manufacturer of the equipment to see what certification they recommend prior to someone giving fit test and certifying the results.

More Later.

I will be in a COOP training class with ORM today and Wednesday from 9 am to 5pm? if you need me page me 202-991-0699 or call me, I will check my e-mails this evening.

Jimmy is working on the P card issue and will have that to Ms. West this AM or early afternoon.

See Ya!

Big Al

Alfred B. Jeffery III
Battalion Fire Chief
2531 Sherman Ave. NW
Washington, DC 20001
202-673-6617 Office
202-673-6431 Fax
202-345-6294 Cell
alfred.jeffery@dc.gov