UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CALVERT L. POTTER, *et al.*, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br> DISTRICT OF COLUMBIA, <br><br>　　　　Defendant. | No. 01-cv-1189 (JR) |
| STEVEN B. CHASIN, *et al.*, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br> DISTRICT OF COLUMBIA, <br><br>　　　　Defendant. | No. 05-cv-1792 (JR) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO RECONSIDER GRANT OF SUMMARY JUDGMENT TO PLAINTIFFS OR IN THE ALTERNATIVE FOR <u>RELIEF UNDER RULE 59</u>**

　　　　The Department's Motion for Reconsideration, which cites no new evidence and no legal authority, attempts to withdraw a concession it made long ago and shift the focus of the hypothetical scenario that constituted its main argument in this case, in hopes of justifying the enforcement of its facial hair ban against the plaintiffs. The Department's re-imagined hypothetical is too little too late, and provides no valid reason for the Court to reconsider its ruling that the Department had not met its heavy burden of persuasion under the Religious Freedom Restoration Act ("RFRA"). The motion should therefore be denied.

　　　　**1.　　Legal Standard For Motions For Reconsideration.**

　　　　The Department's motion conspicuously omits any mention of the legal standard governing motions for reconsideration, and instead recites the summary judgment standard as if

the Court were obligated to conduct a de novo review of the summary judgment ruling it just made. But that is not the case. To the contrary, "a district court should not grant a motion for reconsideration unless the moving party shows new facts or clear errors of law which compel the court to change its prior position." *Nat'l Ctr. for Mfg. Scis. v. Dep't of Def.*, 199 F.3d 507, 511 (D.C. Cir. 2000); *see, e.g.*, *Harrison v. Lappin*, --- F. Supp. 2d ----, 2007 WL 2807864, at *2 (D.D.C. Sept. 27, 2007) (Robertson, J.) ("Motions under Rule 59(e) are disfavored, and relief under the rule is granted only when the moving party establishes extraordinary circumstances."). As this Court recently reminded litigants, "[a] Rule 59(e) motion is not a second opportunity to present arguments upon which the Court already has ruled or to present arguments that could have been presented earlier." *Harrison*, 2007 WL 2807864, at *2. Just as the Department failed to meet its heavy burden under RFRA on the parties' cross-motions for summary judgment, it has failed to meet its separate heavy burden in seeking reconsideration.

    **2.**  **The Department Cannot Withdraw Its Concession That It Was Not Worried About The Use Of SCBAs By Bearded Firefighters.**

    The Department contends, remarkably, that the Court's conclusion that positive-pressure self contained breathing apparatuses ("SCBAs") are suitable for use by bearded firefighters must have been based on a misunderstanding of the parties' statements of undisputed material facts. The Department overlooks the fact that throughout this case it has conceded that, because of the SCBA's mode of operation, it does not seek to justify its facial hair ban on the ground that bearded firefighters cannot safely wear SCBAs during the routine course of duty.

    In June 2005, when the Department attempted to justify its newly issued facial hair ban solely on the basis of safety rather than a combination of safety, grooming, and esprit de corps, the Department's counsel informed the Court that the Department was not concerned about the *Potter* plaintiffs' use of positive-pressure SCBAs, because overpressure in the

2

facepiece would cause "air from the tank to blow contaminants out" in the event of an imperfect seal. June 13, 2005 Tr. at 6:1-2. The Department's counsel indicated that having an imperfect seal while using an SCBA might reduce the effective life of a firefighter's air tank, but expressly stated that this issue was not motivating the Department's facial hair ban:

> Now, you will have the lifetime that you can spend in a fire reduced, because every time there's a break in the seal and the air has to blow, that's air that's not in your tank, but maybe an hour tank will last 45 minutes. <u>That's not what we're worried about.</u>

*Id*. at 6:11-16 (emphasis added). At the August 1, 2005 evidentiary hearing in *Potter*, the Department's safety officer, Captain William Flint, cogently explained to the Court why an SCBA with an imperfect facepiece seal does not present a safety hazard: "if there is a leakage there, the air will then move out from inside of the face piece, protecting the wearer from toxic atmospheres." Aug. 1 Tr. at 89:14-16.

The Court simply took the Fire Department at its word when it stated that, "for the vast majority of firefighter activity, a perfect seal between the face mask and the face is not required for safety." [*Potter* Dkt. 151 at 17; *id*. at 9 (citing testimony of Capt. Flint).] Having taken this position throughout this litigation, the Department cannot reverse course in a motion for reconsideration and profess that it was indeed worried about the use of SCBAs by bearded firefighters in the routine course of duty because of the possibility of imperfect seals, and that the Court clearly erred in failing to recognize as much.

Moreover, the purported evidence now cited in the Department's motion is insufficient to create a genuine issue of material fact on the question whether the Department had demonstrated that bearded firefighters cannot safely wear positive-pressure SCBAs. There was no dispute that the OSHA regulations and the National Fire Protection Association Standards frown upon firefighters having facial hair. But even if the OSHA regulations or the NFPA

Standards were binding upon the Department, which they are not, the Department offers no basis on which this Court should have concluded that either trumps RFRA. Nor can the Department now attempt to create a genuine issue of material fact by pointing to the declarations of its consultant Dr. McKay, which summarized OSHA regulations and other standards and discussed in detail the use of negative-pressure air purifying respirators and positive-pressure powered air purifying respirators ("PAPRs"). In any event, had the Department wished to rely on Dr. McKay at summary judgment, it should have made him available when plaintiffs noticed his deposition rather than obtaining a stay of discovery on the ground that no further discovery was necessary to resolve the parties' cross-motions for summary judgment.[1]

Furthermore, the Department's assertion that reconsideration is warranted because "[t]his is not a case of the [Department] looking for a reason to vindictively burden plaintiffs' free exercise of religion" (Dep't Memo. at 9), misses the point. RFRA prohibits the government from "substantially burden[ing] a person's exercise of religion, 'even if the burden results from a rule of general applicability,'" *Gonzalez v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418, 424 (2006) (quoting 42 U.S.C. § 2000bb-1(a)), and the Department can hardly contend that the Court committed clear legal error by failing to shift the burden to plaintiffs and require them to prove discriminatory intent.

---

[1] *See Potter* Dkt. 126 (Defendant's Motion for Stay). The stay obtained by the Department also blocked plaintiffs' efforts to discover the results of the 2006 Department-wide fit tests, which might have been probative of the ability of beardless firefighters to consistently obtain an adequate facepiece seal with the same mask. The Department has never disputed the fact that numerous firefighters without facial hair failed on their first attempts to pass the 2005 Department-wide fit tests, only to then pass the test the same day using the same mask.

### 3. The Department Cannot Prevail On Reconsideration By Shifting The Focus Of The Hypothetical Scenario In Which Negative-Pressure Masks Might Be Required.

In its attempts to justify its facial hair ban since June 2005, the Department has routinely hypothesized that a catastrophic event might one day require <u>all</u> Department members to don their negative-pressure Go-Bag filter masks for a sustained period of time.  The gist of the Department's scenario has always been that the catastrophe would require an "all hands" response, and that plaintiffs could not be excused from their duty to respond by their inability to wear negative-pressure Go-Bag filter masks with their beards.

In granting summary judgment to plaintiffs, the Court recognized that even in the event of a catastrophe not all Department members would be required simultaneously to don their Go-Bag filter masks, and held that "the Department ha[d] not carried its burden of persuasion that <u>these plaintiffs</u> must necessarily function in negative pressure APRs in order for the Department's ('time sensitive rescue') mission to be accomplished . . . ." [*Potter* Dkt. 151 at 18.]  The Court did not hold, as the Department cynically suggests, that the Department would need to "excus[e] plaintiffs from duty" (Dept. Memo. at 9) in the event that Department members were ever required to wear their negative-pressure Go-Bag filters.  Instead, the Court held that the Department had not met its burden under RFRA of proving that "bearded firefighters not approved for use of negative pressure APR systems could not be redeployed either 'up' to areas of duty where SCBA use is required, or 'down' to cold zone areas where no respiratory protection is needed." [*Potter* Dkt. 151 at 19.]

The Department cannot now satisfy its burden on reconsideration by suggesting, for the first time, and contrary to its earlier position, that the focus in an all-hands-on-deck catastrophe scenario should be on the handful of teams of which a plaintiff firefighter might be a member rather than on the Department as a whole.  Even if all firefighters, including the plaintiff

5

firefighters, function in five-member teams -- and the Department points to no evidence suggesting that they do -- the Department has not demonstrated that a team that includes one of the plaintiff firefighters could not be redeployed "up" or "down" in such a situation, or that a firefighter from another team could not switch places with a plaintiff firefighter in such a situation. The Department does not require all members of a team to take leave when one member gets sick. Having failed again to meet its burden, the Department should not be granted reconsideration.

### 4. The Court's Summary Judgment Ruling As Applied To The Paramedic Plaintiffs Has Not Been Challenged.

Even if the Court were inclined to grant the Department's motion, it applies only to the firefighter plaintiffs and not to the paramedic plaintiffs. The Court noted (as was undisputed in the record) that the Department's paramedics are not trained to work in environments that are immediately dangerous to life or health (IDLH), and therefore do not use SCBAs. [*Potter* Dkt. 151 at 13-14.] Thus, the Department's argument about the propriety of wearing an SCBA with facial hair does not apply to the paramedic plaintiffs. The Department's argument about the necessity of having firefighters function in a five-person team in the event of an emergency also is obviously inapplicable to the paramedic plaintiffs. Because the Department has chosen not to move for reconsideration of the Court's summary judgment ruling as applied to the paramedic plaintiffs, that ruling must stand.

### CONCLUSION

For the foregoing reasons, the Court should deny defendant's Motion for Reconsideration or in the Alternative For Relief Under Rule 59.

                                                                          Respectfully submitted,

| /s/ Joshua A. Doan | /s/ Arthur B. Spitzer |
|---|---|
| William D. Iverson | Arthur B. Spitzer |
| Joshua A. Doan | American Civil Liberties Union |
| Covington & Burling LLP |    of the National Capital Area |
| 1201 Pennsylvania Avenue, N.W. | 1400 20th Street, N.W., Suite 119 |
| Washington, DC 20004 | Washington, DC 20036 |
| (202) 662-5678 | (202) 457-0800 |
| *Counsel for Plaintiffs Potter, Umrani, and Ali* | *Counsel for Plaintiffs* |

October 29, 2007